545 So.2d 1063 (1989)
Harvey SHARP, Jr., Husband of/and Sheila S. Sharp
v.
Richard C. DAIGRE, Jr., United Service Automobile Association, Acceptance Insurance Company, and Aetna Life and Casualty Insurance Company.
No. 87 CA 1266.
Court of Appeal of Louisiana, First Circuit.
May 16, 1989.
Rehearing Denied June 23, 1989.
Joseph J. Weigand, Jr., Houma, for plaintiffs and appellants-Harvey and Sheila Sharp.
Richard L. Edrington, LaPlace, for defendant and appellee-Aetna Life and Cas. Ins. Co.
James M. Funderburk, Houma, for defendant and appellee-Acceptance Ins. Co.
Wade D. Rankin, New Orleans, for defendant and appellee-Richard G. Daigre, Jr. and United Service Auto Assn.
Before COVINGTON, C.J., and LOTTINGER, EDWARDS, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, ALFORD, LeBLANC and FOIL, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment denying recovery of exemplary (punitive) damages from an uninsured motorist insurer.

FACTS
On May 16, 1986, Harvey Sharp, Jr. was operating his personally owned vehicle on Hollywood Road in Houma, Terrebonne Parish, Louisiana, when he was rear-ended by a vehicle owned and operated by Richard G. Daigre, Jr. At the time of the accident, Daigre was insured by United Service Automobile Accident Insurance Company (United) in the amount of $100,000.00. Sharp settled with Daigre and United for $100,000.00 prior to trial. The settlement gave Daigre and his insurance company a complete and final release. Sharp specifically reserved all rights against all remaining parties. The Sharp vehicle was insured by Aetna Life and Casualty Company (Aetna) with liability and *1064 uninsured motorist coverage of $100,000.00. Additionally, Acceptance Insurance Company (Acceptance) had in effect a policy of garage insurance issued to Canal Auto Sales (an unincorporated company owned by Harvey Sharp, Jr.) with uninsured motorist insurance limits of $25,000.00.
On the morning of trial, Aetna and Acceptance dismissed their third party demands against Daigre. At trial, Aetna and Acceptance stipulated that, in the event judgment was rendered against the uninsured motorist policies, Aetna and Acceptance would pro-rate the judgment according to the amount of coverage each provided, viz., Aetna to pay 80% of any judgment and Acceptance to pay 20% of any judgment.
After trial, the jury awarded Sharp $94,200.00 in general and special damages and awarded Sharp an additional $28,000.00 for exemplary damages.[1] The trial judge struck the award of exemplary damages against the uninsured motorist carriers, Aetna and Acceptance, on the grounds that the uninsured motorist policies did not cover exemplary damages. Since Sharp had already settled with Daigre and United for more than the amount awarded by the jury, no judgment was ultimately rendered against the uninsured motorist carrier.
From this adverse judgment, Sharp appeals. The only issue for review is whether or not an uninsured motorist insurer is liable for exemplary damages.

EXEMPLARY DAMAGES
To properly evaluate the issue in the instant case, we must first examine the distinctions between compensatory and exemplary damages.
Black's Law Dictionary, 5th Edition, page 352, defines "compensatory damages" as follows:
Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury.
Generally, compensatory damages are awarded on the basis of the loss suffered and are designed to replace the loss caused by the wrong or injury. Compensatory damages are divided into general and special damages. Black's Law Dictionary, pp. 351-352 (5th ed. 1979). Stated another way, the purpose of a compensatory damage award is to restore the injured party, as closely as possible, to the position in which he would have been had the accident or incident never occurred. Great American Surplus Lines Insurance Co. v. Bass, 486 So.2d 789 (La.App. 1st Cir.1986), writ denied, 489 So.2d 245 (La.1986).
"Exemplary damages" are defined as:
Exemplary damages are damages on an increased scale, awarded to the plaintiff over and above what will barely compensate him for his property loss, where the wrong done to him was aggravated by circumstances of violence, oppression, malice, fraud, or wanton and wicked conduct on the part of the defendant, and are intended to solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong, or else to punish the defendant for his evil behavior, or to make an example of him, for which reason they are called "punitive" or "punitory" damages or "vindictive" damages. Black's Law Dictionary, 5th Edition, page 352.
LSA-C.C. art. 2315.4 was enacted by Act 511 of 1984 as article 2315.1, redesignated as article 2315.2, and again redesignated in 1986 as article 2315.4, provides:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
LSA-C.C. art. 2315.4 has a dual purpose, to penalize (and therefore deter) the drunk driver, as well as to provide damages for *1065 the victim of such driver. Elery Morvant v. United States Fidelity & Guaranty Company, et al, 538 So.2d 1107 (La.App. 5th Cir.1989). Although the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and, from the plaintiff's standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him. Elery Morvant v. United States Fidelity & Guaranty Company, et al, supra; Creech v. Aetna Casualty & Surety Company, 516 So.2d 1168 (La.App. 2nd Cir.1987), writ denied, 519 So.2d 128 (La.1988).
In the instant case, LSA-C.C. art. 2315.4 clearly applies to the defendant, Daigre. Daigre rear-ended the Sharp vehicle, which was stopped for a traffic light. Daigre registered a .17 on an intoxilyzer test within an hour of the accident. The jury determined that Daigre was intoxicated at the time of the accident and that his intoxication was a cause of the accident.
Having determined that LSA-C.C. art. 2315.4 applies to the instant case, we must determine whether exemplary damages are covered by uninsured motorist protection.
The trend in the jurisprudence has been to find that uninsured motorist policies provide protection for exemplary damages. Elery Morvant v. United States Fidelity & Guaranty Company, et al, supra; Bauer v. White, 532 So.2d 506 (La.App. 1st Cir.1988). See Johnson v. Fireman's Fund Insurance Co., 425 So.2d 224 (La. 1982).[2]
In Elery Morvant v. United States Fidelity & Guaranty Company, et al, supra, our Brethren of the Fifth Circuit held that exemplary damages are recoverable from the insured victim's uninsured motorist insurer, up to the policy limits of the uninsured motorist coverage, unless such damages are specifically excluded by clear and unqualified language in the policy.[3] The court in Morvant stated:
We find that compensation for the victim plaintiff is an aspect of LSA-C.C. art. 2315.4, which is just as important as is deterrence. Moreover, in cases such as the one at bar, deterrence is a moot issue to a deceased drunk driver. In effect, were we to deny exemplary damages to the plaintiff because the deterrent effect is seemingly absent, as the defendant insurer urges, we would defeat one of the purposes of the statute and the purpose of obtaining UM coverage. This would also penalize the victim plaintiff who paid the stipulated UM premium to the defendant insurer who agreed that "we will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle." The very purpose of obtaining and paying an extra premium for UM coverage is to protect oneself from the failure of the other motorist to adequately insure himself. The appellee insurer also argues, in effect, that it is not fair or logical for it to have *1066 to pay exemplary damages under UM coverage because it has no chance to review the record of or assess the insurability of the uninsured motorist, whereas it does have such opportunity under liability coverage. We disagree. The insurer never knows who it is insuring against under UM coverage. This is a calculated risk, in any event, so this argument must fall. Defendant's reasoning would defeat the ultimate purpose of UM coverage.
This court recently held in Bauer v. White, supra, that exemplary damages may be awarded to an insured under an uninsured motorist provision where the insurer of the policy promises to pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle and caused by an accident. In resolving the issue in this manner, the court stated:
The Louisiana Uninsured Motorist Statute, La.R.S. 22:1406(D), requires that each insurance policy written in Louisiana provide the statutorily set minimum coverage to drivers injured by uninsured motor vehicles, absent a written choice by the insured not to elect such coverage, "* * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom * * *." The object of the statute is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987); Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983); Johnson v. Fireman's Fund Insurance Company, 425 So.2d 224 (La. 1982); Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982); Bond v. Commercial Union Assurance Company, 407 So.2d 401 (La. 1981); Niemann v. Travelers Insurance Company, 368 So.2d 1003 (La.1979).
The intent of uninsured motorist coverage is "to protect the insured at all times against the generalized risk of damages at the hands of the uninsured motorists and not to limit coverage to certain situations or to a certain degree of risk of exposure to the uninsured motorists." Elledge v. Warren, 263 So.2d 912, 918 (La.App. 3d Cir.), writ denied, 266 So.2d 223 (La.1972). To carry out this objective of providing reparation for those injured through no fault of their own, our supreme court has held the statute is to be liberally construed. Hoefly, 418 So.2d at 578. The purposes of the uninsured motorist statute are all furthered by liberally construing the statute to include exemplary damages as well as compensatory damages in those "damages... because of bodily injury" that insurers are required to pay their insureds. [532 So.2d at 508]
In reaffirming the position taken by this court in Bauer v. White, supra, we find that the coverage afforded by uninsured motorist insurance includes exemplary damages, for several reasons.[4]
LSA-R.S. 22:1406 states, in pertinent part, as follows:
D. The following provision shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not *1067 less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or by any of its affiliates. (emphasis added)
The object of the uninsured motorist statute is to promote full recovery of damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. Johnson v. Fireman's Fund Insurance Company, supra; Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La. 1981); Niemann v. Travelers Insurance Company, 368 So.2d 1003 (La.1979); Whitten v. Empire Fire and Marine Insurance Company, 353 So.2d 1071 (La.App. 2d Cir. 1977). The central purpose of the uninsured motorist statute is the protection of the injured person. The uninsured motorist act protects him by making available in all situations an opportunity for some recovery in place of what he would have gotten if the tortfeasor had been insured. See 2A A. Larsen, The Law of Workmen's Compensation, § 71.23(h) (Desk Ed.1982).
Several other circuit courts of appeal have expressly held that liability policies (as distinguished from UM coverage) cover award for exemplary damages granted under LSA-C.C. art. 2315.4 unless expressly excluded. See Creech v. Aetna Casualty & Surety Company, supra; Louviere v. Byers, 526 So.2d 1253 (La.App. 3rd Cir. 1988), writ denied, 528 So.2d 153 (La.1988); Falgout v. Wilson, 531 So.2d 492 (La.App. 1st Cir.1988), writ denied, 532 So.2d 154 (La.1988). See also Morvant v. USF & G, et al, 538 So.2d 1107 (La.App. 5th Cir.1989).
In Falgout v. Wilson, supra, this court held that a liability policy covers an award for exemplary damages under LSA-C.C. art. 2315.4 even when personal injury damages were not sought. Chief Judge Covington, writing for this court, stated:
We find that the language of the policy, which makes the insurer liable for "all sums which the insured shall become legally obligated to pay" because of "injury to or destruction of property, including loss of use thereof ... arising out of the ownership, maintenance or use of the owned automobile," imposes liability on the insurer for exemplary damages. The words "all sums" is very broad; they clearly extend coverage to all sums that the insured is legally obligated to pay. This language does not limit coverage merely to "compensatory damages." There is no exclusionary or limiting clause pertaining to the intoxicated condition of the insured motorist.
Moreover, the insured has a reasonable expectation of coverage for driving while intoxicated unless such coverage is expressly excluded.
Additionally, we see no legislative intent to preclude insurance coverage of exemplary damages under uninsured motorist coverage. Nowhere in LSA-C.C. art. 2315.4 does the legislature prohibit insurance coverage of exemplary damages. The legislature is well aware that motorists are required to have automobile insurance and that these policies generally provide protection against claims of any character not intentionally inflicted. The legislature could easily have provided that no insurance coverage shall be allowed to cover exemplary damages, but did not do so.
Furthermore, at issue is also a very important public policy, namely that an insurance company which accepts a premium for *1068 covering all liability for damages should be required to honor its obligation. Public policy is better served by giving effect to the insurance contract rather than by creating an exclusion based on a judicial perception of public policy not expressed by the legislature. We hold that public policy does not preclude insurance coverage of exemplary damage awards under LSA-C.C. art. 2315.4. See Creech v. Aetna Casualty & Surety Company, supra.
A careful examination of the provisions of the respective uninsured motorist policies in the instant case demonstrates that policy provisions are sufficiently broad enough to encompass exemplary damage and do not attempt to specifically exclude such coverage.
The Aetna policy provided:
We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by a covered person; and,
2. Caused by an accident.
(Emphasis added)
The Acceptance policy provided, in pertinent part, as follows:
In accordance with the provision of Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950, Subsection D, amended, which permits the insured named in the policy to reject the Uninsured Motorists Coverage or select a limit for such coverage lower than the limit for Bodily Injury Coverage in the policy, the undersigned insured (and each of them) does hereby reject such coverage, or (if amounts are inserted) selects limits of $25,000 each person, $25,000 each accident for said insurance, being the insurance provided for protection of persons insured under this policy who would legally be entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. (Emphasis added)
Therefore, we find that to effectuate the purposes of LSA-C.C. art. 2315.4, the Louisiana UM Statute, LSA-R.S. 22:1406(D), and as well as clear reading of the policies, exemplary damages are recoverable under both uninsured motorist policies.

RELEASE OF DAIGRE AND UNITED
The UM carrier has no right (other than subrogation) to recover against the tortfeasor and its insurer. Bosch v. Cummings, 520 So.2d 721 (La.1988). Furthermore, release of the tortfeasor and the tortfeasor's insurer does not release the UM carrier. Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984); Pace v. Cage, 419 So.2d 443 (La.1982).
We do not believe that a different rule should apply in suits for exemplary damages even though, in the particular circumstances, the deterrent effect is removed. Deterrence is only one aspect of exemplary damages; the right of the injured party to enhanced damages is still present. A similar situation is presented when the tortfeasor is killed in the accident. Cf. Elery Morvant v. United States Fidelity & Guaranty Company, et al, supra. Therefore, we find that the release of the tortfeasor and his insurer does not excuse a UM insurer from his obligation to respond in damages, compensatory or exemplary.
Therefore, we find that Sharp is entitled to recover exemplary damages against Aetna and Acceptance.

CONCLUSION
For the above and foregoing reasons, that portion of the judgment of the trial court rejecting plaintiff's claim for exemplary damages is reversed, and the jury award is herein reinstated. Judgment is rendered herein in favor of plaintiff and against the defendants for $22,200.00[5] in the proportion of 80% of the jury award for *1069 exemplary damages to be paid by Aetna and 20% of the jury award for exemplary damages to be paid by Acceptance, with legal interest from date of judicial demand.[6] Aetna and Acceptance are jointly taxed with all costs of this appeal.
REVERSED AND RENDERED.
SHORTESS, J., concurs in part & dissents in part with reasons.
FOIL, J., dissents in part for the reasons set forth by SHORTESS, J.
LeBLANC, J., dissents for reasons assigned by LANIER, J.
SAVOIE, J., dissents for reasons assigned by LANIER, J.
LANIER, J., dissents and assigns reasons.
SHORTESS, Judge, dissenting in part.
I agree with the majority view that our recent holding in Bauer is correct. However, under the facts of this case, I dissent in part. The record is clear that plaintiff settled with Daigre and USAA for $100,000.00, the tort-feasor's primary liability limits, and released Daigre and USAA from all claims, including claims for punitive damages. The underinsured liability carriers then dismissed their third party claims against Daigre and USAA, although they objected on the grounds that since plaintiff had released Daigre from punitive damages the issue was moot. I agree with this position.
Our supreme court, in Bosch v. Cummings, 520 So.2d 721 (La.1988), laid to rest once and for all the notion that the uninsured motorist statute affords any rights against the tort-feasor, other than subrogation rights. A Fourth Circuit case, Moncrief v. Panepinto, 489 So.2d 938 (La.App. 5th Cir.1986) had distinguished between a carrier's right of recovery against a tort-feasor under legal subrogation, conventional subrogation, and an independent right arising under operation of law. Under Moncrief, plaintiff's release of the tort-feasor did not prevent the underinsured carrier from proceeding independently against the tort-feasor. Bosch, overruling Moncrief explicitly, held that after a settlement and release of the tort-feasor by the plaintiff, there were no rights left for the underinsured carrier to exercise. Any rights it had were purely derivative; the underinsured carrier has no rights independent of subrogation.
Bauer acknowledged the underinsured carrier's argument that the inclusion of exemplary damages under the uninsured motorist statute would thwart the purposes of LSA-C.C. art. 2315.4, but rebutted the argument by offering subrogation rights as a means of placing on the tort-feasor the burden of the exemplary damages. No release was given to the tort-feasor in Bauer. In this case, the tort-feasor was released and clearly under Bosch any rights defendants had against the tort-feasor were wiped out as well.
Thus the tort-feasor was excused, by plaintiff's release, from ever paying any punitive damages at all, either directly or indirectly.
The majority opinion states that LSA-C.C. art. 2315.4 has a dual purpose: to deter and to compensate. Here, deterrence is non-existent: the tort-feasor has gone free. Compensation, as a result of plaintiff's release of the tort-feasor and the resulting impairment of the carriers' subrogation rights, comes directly and completely from defendant carriers. Plaintiff is fully compensated for all his damages. The problem lies in the ultimate source of that compensation. It comes at the expense of deterrence. When a plaintiff releases a tort-feasor from all claims, including punitive damages, the case should end.
I respectfully dissent in part.
LANIER, Judge, dissenting.
We cannot agree with the majority opinion because (1) it incorrectly defines exemplary damages; (2) it incorrectly determines the purpose of La.C.C. art. 2315.4; *1070 (3) it liberally construes La.C.C. art. 2315.4 when, as a penal statute, it should be strictly construed; (4) it misinterprets the history and purpose of the Louisiana uninsured motorist (UM) statute; (5) it misinterprets the language of the insurance policies in question; (6) it implicitly interprets the UM statute as requiring coverage for exemplary damages in all UM policies; and (7) it reaches a result that is unjust and contrary to good public policy.

INTERPRETATION OF LA.C.C. ARTICLE 2315.4
The majority erroneously holds that the legislative intent of La.C.C. art. 2315.4 (Act 511 of 1984) was "to penalize (and therefore deter) the drunk driver, as well as to provide damages for the victim of such driver." (Emphasis added.) The majority asserts that "punitive damages are additional compensation for the egregious conduct inflicted upon" the victim. (Emphasis added.)
The majority correctly notes that compensatory damages are intended to accomplish reparations, that is, to replace the loss of a person caused by the fault of another. Compensatory damages are divided into general and special damages. The majority then quotes from Black's Law Dictionary to define exemplary damages. A review of the Black's Law Dictionary citation shows that the majority has only used part of the definition. The following part of the definition was omitted:

Unlike compensatory or actual damages, punitive or exemplary damages are based upon an entirely different public policy considerationthat of punishing the defendant or of setting an example for similar wrongdoers, as above noted. In cases in which it is proved that a defendant has acted willfully, maliciously, or fraudulently, a plaintiff may be awarded exemplary damages in addition to compensatory or actual damages. Damages other than compensatory damages which may be awarded against person to punish him for outrageous conduct. (Emphasis added.)

Black's Law Dictionary, 5th Edition, page 352 (1979).
In C. Huckabay, The Insurability of Punitive Damages in Louisiana, 48 La.L.Rev. 1161, 1166, n. 27 (1988), appears the following:
See also the definition of punitive damages in Restatement (Second) of Torts 2d § 908, at 464: "Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."
In J. Bolin, Enter Exemplary Damages, 32 Louisiana Bar Journal 216 (Dec.1984), appears the following:
From the very earliest writings in civilization, laws were developed making aggravated conduct carry more strigent consequences than merely compensating the victim for the amount of actual losses sustained. As the concept grew it acquired various names such as "exemplary," "punitive," and "punitory" damages. All described the same, that is, damages over and above what would compensate plaintiff for actual losses when the wrong done was aggravated by willful, wanton, or reckless conduct by the defendant. Numerous purposes for awarding exemplary damages have been given. Those most often mentioned are:
(1) to punish the wrongdoer; and
(2) to deter the kind of conduct involved by delivering a message to the wrongdoer, and generally to others in society, that severe financial consequences, beyond mere compensation of the victim for actual losses sustained (i.e. "compensatory damages"), will flow from engaging in that conduct. [Footnotes omitted.]
Thus, by definition, exemplary damages are not intended "to provide damages for the victim"; they are intended to punish the tort-feasor and deter others from similar conduct. While it is true that, as a consequence of enforcing an exemplary damage law against the wrongdoer, the victim will receive a "bonus" in the form of the exemplary damage award; nevertheless, *1071 the purpose of the award is punishment and deterrence, not compensation.
The most basic rule of statutory construction is that the court should give a statute the meaning the lawmaker intended it to have. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). La.C.C. art. 2315.4, which originated as Act 511 of 1984, provides as follows:

In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries. [Emphasis added.]
In C. Huckabay, supra, at pp 1176-1178, appears the following:
Another argument favoring the denial of insurability is to simply read the language of the two statutes. Both Louisiana Civil Code articles 2315.3 and 2315.4 begin with the phrase, "[i]n addition to general and special damages, exemplary damages may be awarded...." This phrase should dissipate all notions that exemplary damages in Louisiana have any compensatory nature. The plaintiff is compensated for his injuries through general and special damages. The exemplary damages are awarded over and above the plaintiff's compensatory damages. The restatement of torts also provides that punitive damages are those other than compensatory damages and are awarded against a person to punish him for his outrageous conduct and to deter him and others from engaging in similar future conduct. If the definitions of punitive damages and compensatory damages are perused, it becomes apparent that exemplary or punitive damages have no compensatory nature.
A look at the legislative intent behind this article will also determine the nature of these damages. When Louisiana Civil Code article 2315.4 was proposed and presented to the House Committee on Civil Law and Procedure, the bill's sponsor noted that many criminal statutes in the past few years had been passed attempting to handle the problem of the drunk driver. However, he lamented that Louisiana had not imposed any civil penalties to attempt to sanction drunk drivers. House Bill 1051 which once enacted became Louisiana Civil Code article 2315.4 was designed to provide for civil penalties.87
87. H.R. 1051, Reg. Sess. 1984 La. Acts No. 511. Rep. Bolin introduced House Bill No. 1051 to the House Committee on Civil Law and Procedure and stated the following:
You know, the Legislature has passed many criminal statutes in the last years attempting to help, or attempting to address a problem with the intoxicated driver on highway[s]; however, we have failed to pass any type of legislation that would provide for additional penalties in civil matters. That's what this bill attempts to do.
[Three footnotes omitted.]
In J. Bolin, supra, at pp 217-218, appears the following:

A TOOL TO DETER ANTI-SOCIAL CONDUCT
Acts 335 and 511 employ the term "exemplary" rather than "punitive" damages. This suggests a greater legislative concern for the "example" purpose of deterring anti-social conduct, than the "punishment" purpose of punishing the wrongdoer. Further, deterrence in the two areas covered by these acts, hazardous/toxic substances and intoxicated drivers, has drawn increasing public and legislative concern in recent years.
The public seems to lack confidence in te [sic] message of deterrence. Exemplary damages add another means to deter. On the statute books, in the court rooms, and through the news media, the message is delivered to those who engage in the most aggravated of human conduct that they do so at the risk of severe economic consequences, aside from what criminal penalties may or may not be imposed. Many believe that making gross anti-social conduct financially *1072 costly to the wrongdoer is the most effective tool of deterrence.

REQUISITE CONDUCT
Whereas compensatory damages relate to the nature and extent of the harm done, exemplary damages relate to the nature of the conduct of the defendant.
. . . .

AMOUNT OF THE AWARD
Among the various factors relevant to the amount of the award are:
(1) the nature and extent of the harm to plaintiff;
(2) the wealth or financial situation of the defendant;
(3) character of the conduct involved; and,
(4) the extent to which such conduct offends a sense of justice and propriety.
The general approach of the courts is most often to cite such factors as guides in ultimately determining an award that will best achieve the purposes of punishment and deterrence.
[Footnotes omitted]
It is clear from the above authorities that the legislative purpose of La.C.C. art. 2315.4 is to punish drunk drivers and deter other drivers from doing the same thing; its purpose is not to compensate the victim. The majority holding that the purpose of the statute is "to provide damages for the victim of such driver" is not correct.
The majority further asserts that "we see no legislative intent to preclude insurance coverage of exemplary damages under uninsured motorist coverage. Nowhere in LSA-C.C. art. 2315.4 does the legislature prohibit insurance coverage" and "[t]he legislature could easily have provided that no insurance coverage shall be allowed to cover exemplary damages, but did not do so." The flaws in this reasoning are obvious. La.C.C. art. 2315.4 is part of Chapter 2 (Of Offenses and Quasi Offenses) of Title V (Of Quasi Contracts, and Of Offenses and Quasi Offenses) of Book III (Of the Different Modes of Acquiring the Ownership of Things) of the Louisiana Civil Code. Chapter 2 is composed of Civil Code Articles 2315 through 2324, which are generally the basis for the law of torts in Louisiana. These code articles do not purport to regulate insurance in Louisiana; insurance is provided for in Title 22 of the Louisiana Revised Statutes where the statute providing for UM coverage, La.R.S. 22:1406, is located. There is nothing in La.C.C. art. 2315 et seq. that precludes or requires insurance coverage; nowhere in La.C.C. art. 2315 et seq. does the legislature prohibit or mandate insurance coverage. Very simply, La.C.C. art. 2315 et seq. do not pertain to insurance coverage. When La.C.C. art. 2315 et seq. were first enacted, the legislature easily could have provided that insurance coverage should or should not have been allowed, but it did neither. This, however, has nothing to do with how La.C.C. art. 2315.4 should be interpreted. Rather, as will be discussed in detail later, the Louisiana UM statute was in existence prior to the enactment of La. C.C. art. 2315.4; as originally enacted, the UM statute did not cover exemplary damages or property damages (it only covered compensatory bodily injury damages); and, when La.C.C. Art. 2315.4 was enacted in 1984, the UM statute was not amended to provide for coverage of exemplary damages under the UM statute. Contrary to what the majority holds, the failure of the legislature to amend the preexisting UM statute when the exemplary damage law was enacted indicates a legislative intent not to change the UM statute.
The majority has adopted a liberal interpretation of La.C.C. art. 2315.4 to justify its holding that the exemplary damages of La.C.C. art. 2315.4 are intended by the legislature to compensate the victims of drunk drivers. However, La.C.C. art. 2315.4 is a penal statute. When a penal statute is being interpreted in an UM setting, it must be strictly construed. McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La.1985); Hart v. Allstate Insurance Company, 437 So.2d 823 (La. 1983). The majority has fallen into error *1073 by not construing La.C.C. art. 2315.4 strictly.
The basic theory of the majority opinion is that (1) La.C.C. art. 2315.4 "has a dual purpose, to penalize (and therefore deter) the drunk driver, as well as to provide damages for the victim of such driver", (2) the "purpose of the uninsured motorist statute is the protection of the injured person... by making available in all situations an opportunity for some recovery in place of what he would have gotten if the tortfeasor had been insured", and (3) "to effectuate the purposes of LSA-C.C. art. 2315.4, the Louisiana UM Statute, LSA-R.S. 22:1406(D), and as well as clear reading of the policies, exemplary damages are recoverable under both uninsured motorist policies." The keystone of the policy arguments, based on La.C.C. art. 2315.4 and the UM statute is that exemplary damages, by definition, are intended "to provide damages for the victim." However, the generally accepted definition of exemplary damages does not accommodate this interpretation. The majority has overcome this impediment by the simple expedient of changing the standard definition. We are not willing to do so. In the Report on Punitive Damages of the Committee on Special Problems in the Administration of Justice of the American College of Trial Lawyers, p 10 (1989), appears the following:

B. Punitive Awards Should Not Be a Surrogate for Compensatory Damages.

The civil justice system should not recognize punitive awards for the purpose of compensating successful plaintiffs. The common law over time has recognized new rights and measures for compensation and is fully capable of doing so in the future. Economic and noneconomic losses are compensable today, and a clear distinction ought to be maintained between awards of that nature and those which are imposed solely to punish and deter. The maintenance of this distinction is important in administering the rules because there should be differences in the process for obtaining the two types of awards. For example, it has already been noted that a clear-and-convincing standard for the plaintiff's burden of proof has been adopted by a number of jurisdictions regarding punitive damages. A mere preponderance is the standard for obtaining compensatory damages. As will be seen below, other distinctions arise from the recommendations of the Committee, and they should not be eroded by permitting one type of damage to serve as a surrogate for the other type. Civil punitive awards should be limited to those egregious situations which clearly call for punishment and deterrence beyond that which is inherent in compensatory awards. [Emphasis added.] [Footnote omitted.]
We believe the above is a better public policy to pursue.

INTERPRETATION OF THE UM STATUTE
This en banc hearing was granted to reconsider our holding in Bauer v. White, 532 So.2d 506, 508 (La.App. 1st Cir.1988), that "[t]he purposes of the uninsured motorist statute are all furthered by liberally construing the statute to include exemplary damages as well as compensatory damages in those `damages ... because of bodily injury' that insurers are required to pay their insureds." [Emphasis added.] The majority has specifically reaffirmed this holding. The majority interprets the UM statute as "making available in all situations an opportunity for some recovery in place of what he [the insured] would have gotten if the tortfeasor had been insured." [Emphasis added.] The majority concludes by observing that allowing recovery for exemplary damages under the UM coverage effectuates the purposes of the Louisiana UM statute.
Policies of insurance issued in Louisiana are considered to contain all provisions required by statute. Accordingly, La.R.S. 22:1406(D) is incorporated into every policy of insurance to which it is applicable, as if it were written in the policy itself. No insurance contract can include any provision inconsistent with or contradictory to *1074 any standard provision used or required to be used by the applicable sections of the insurance code. La.R.S. 22:623. Any policy provision which narrows or excludes the coverage mandated by the statute is not valid. Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983); Fisher v. Morrison, 519 So.2d 805 (La.App. 1st Cir. 1987). Because of this, the importance of determining the intent of the legislature, when it enacted Louisiana's UM statute, is apparent.
The statutory duty of an insurer to provide UM coverage to an insured on the date of the accident was set forth in La.R.S. 22:1406(D)(1)(a), in pertinent part, as follows:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. [Emphasis added.]
General rules for the interpretation of statutes are set forth in Bunch, 446 So.2d at 1360, as follows:
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker.
The Louisiana UM statute specifically states it is "for the protection of persons insured thereunder." This is a clear statement of legislative intent. Compensatory damages protect an insured. Exemplary damages do not protect an insured; they punish a tort-feasor and deter future misconduct. The Louisiana UM statute is not intended to provide coverage for exemplary damages.
La.R.S. 22:1406(D) was enacted by Act 187 of 1962 and became effective on October 1, 1962.[1] At this time, damages in tort cases were awarded pursuant to La.C.C. art. 1934. Reck v. Stevens, 373 So.2d 498 (La.1979). The jurisprudence interpreting La.C.C. art. 1934 did not allow the awarding *1075 of exemplary or punitive damages. Ricard v. State, 390 So.2d 882 (La.1980). La. C.C. art. 2315.4 was enacted by Act 511 of 1984. Thus, at the time the UM law was enacted, a litigant could only recover compensatory (general and special damages) from a tort-feasor and was not entitled to recover the exemplary (punitive) damages of La.C.C. art. 2315.4. When the UM law was enacted in 1962, the legislature could not have intended that it would provide coverage for the exemplary damages of La.C.C. art. 2315.4 because recovery for those damages did not exist. Further, property damage was not covered under the original UM statute. When La.C.C. art. 2315.4 was enacted, La.R.S. 22:1406(D) was not amended to extend its coverage to include exemplary damages. Further, La. R.S. 22:1406(D)(1)(a) must be read in pari materia with La.R.S. 22:1406(D)(2)(b), which provides as follows:
For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication. [Emphasis added.]
An exemplary damage is not a damage suffered by an insured; a compensatory damage is suffered by an insured.
The Louisiana UM statute must also be construed in pari materia with the Louisiana Compulsory Motor Vehicle Liability Security Law. La.R.S. 32:861 et seq. La.R.S. 32:900(B)(2) and (C), defining a motor vehicle liability policy, provides, in pertinent part, as follows:
B. Such owner's policy of liability insurance:
. . . .
(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
. . . .
C. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance. [Emphasis added.]
This language is much broader and substantially different from that of La.R.S. 22:1406(D). If the legislature intended for the coverage under the liability insurance statute to be the same as that under the UM statute, it could have used the same language for both. However, the same language was not used, and the extent of coverage required is different. See, for example, Carroway v. Johnson, 245 S.C. 200, 139 S.E.2d 908 (1965). For example, property damage originally was not covered under the UM statute. See Acts 1987, No. 439. Policies of insurance which are issued pursuant to Louisiana's liability insurance statute generally provide coverage for "all sums the insured legally must pay as damages ... caused by an accident." See, for example, Creech v. Aetna Casualty & Surety Company, 516 So.2d 1168, 1171 (La.App. 2nd Cir.1987), writ denied, 519 So.2d 128 (La.1988). See also, Falgout v. Wilson, 531 So.2d 492 (La.App. 1st Cir.), writ denied, 532 So.2d 154 (La. 1988); Louviere v. Byers, 526 So.2d 1253 (La.App. 3rd Cir.), writ denied, 528 So.2d 153 (La.1988). This language is much broader than that used in the standard UM policy provision in Louisiana. These distinctions are important in properly construing the UM statute.
*1076 The jurisprudence in Louisiana, prior to the enactment of La.C.C. art. 2315.4, indicates that our UM statute was designed to allow an insured to insure himself only for compensatory damages caused by a tort-feasor. In Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580, 582 (1968), appears the following:
Financial responsibility statutes have been enacted by many states, including Louisiana, in an attempt to compel a showing of liability insurance or other financial responsibility as a requisite to the operation of motor vehicles. Many of these statutes allowed one "free accident" before suspension of license or had other limitations. At any rate, they did not obtain the desired result of providing financial responsibility for all who use the highways. In an effort to afford protection to the innocent victim injured by an uninsured and financially irresponsible motorist, many states have enacted legislation requiring insurance companies to afford coverage, for an additional premium, within the general automobile liability insurance policy for loss to the insured occasioned by the negligence of the operator of an uninsured motor vehicle. LSA-R.S. 22:1406(D) provides that all automobile liability insurance policies in Louisiana shall afford not less than the limits set forth in the Motor Vehicle Safety Responsibility Law of Louisiana "* * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom * * * ". [Emphasis added.]
An exemplary damage is not a loss to the insured; a compensatory damage is. An exemplary damage is not a protection to the insured; it is a punishment to the tort-feasor and a deterrence to future misconduct.
In Elledge v. Warren, 263 So.2d 912, 917 (La.App. 3rd Cir.), writ refused, 262 La. 1096, 266 So.2d 223 (1972), appears the following:
There existed in our society a situation whereby financially irresponsible people could acquire and drive vehicles capable of great damage. Because of their financial irresponsibility and lack of insurance, they were unable to respond to their victim in damages under LSA-C.C. Art. 2315. This created a class of injured people in our state who were left without recourse and who, without some form of relief, might become wards of the state. Insurance plans (such as the financial responsibility law) oriented toward coercing motorists to purchase insurance or removing them from the highways if they did not, proved ineffective. Other plans had to be developed.
In an effort to forestall plans distasteful to itself, the insurance industry set forth a plan of compensation for the innocent victims of the uninsured motorists. In surveying the problem, it became evident to our legislature that the source of the harm was a danger peculiar to the use of the automobile and the industry most capable and most interested in resolving the problem was the one most closely related thereto in terms of economics and self interestthe automobile insurers. Therefore, our legislature seized upon the solution set forth by the insurance industry and made the offering of uninsured motorist protection a mandatory condition precedent before the companies could conduct business in Louisiana.
The evil and the injuries existed. By the terms of our statute, whenever evil perpetuates itself upon a policy holder availing himself of uninsured motorist coverage (or insureds under his policy), he is to be compensated for his injuries. In Booth v. Freeman's [sic] Fund Insurance Company, 253 La. 521, 218 So.2d 580, 583 (1969) [sic], our Supreme Court concluded "that the intent of our uninsured motorist statute and the policy endorsement issued thereunder is to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists." See also Valdez v. Federal Mutual Insurance Company, 272 Cal.App.2d 223, 77 *1077 Cal.Rptr. 411, 413 (1969). "... Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own." [Emphasis added.]
Finally, in Hoefly v. Government Employees Insurance Company, 418 So.2d 575, 578-579 (La.1982), appears the following:
The object of that legislation is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured.... Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580, 28 A.L.R.3d 573 (1968). The statute is to be liberally construed to carry out this objective of providing reparation for those injured through no fault of their own.... Elledge v. Warren, 263 So.2d 912 (La.App. 3d Cir.1972); Valdez v. Fed. Mut. Ins. Co., 272 Cal.App.2d 223, 77 Cal.Rptr. 411 (1969). [Emphasis added.]
Reparation is a noun meaning payment for injury or giving satisfaction for a wrong or injury. Black's Law Dictionary, p 1167 (1979); Webster's Ninth New Collegiate Dictionary, p 998 (1984). Reparation is the noun form of the verb to repair and, in this context, it is synonymous with compensation. Black's Law Dictionary, p 256 (1979). Thus, when Hoefly directed that the Louisiana UM statute be liberally construed "to carry out this objective of providing reparation for those injured", it meant the statute was to be liberally construed to provide compensation. This does not mean that the statute must be liberally construed to punish the victim's insurer by requiring UM coverage for exemplary damages.
In W. McKenzie and H. Johnson, Insurance Law and Practice, 15 Louisiana Civil Law Treatise § 115, p 242 (1986), appears the following:

The UM statute and policies limit recovery to damages resulting from bodily injury. There is no coverage for property damage, a risk for which protection is available under other insurance coverages. Bodily injury damages include all damages which arise out of personal injury or death of the insured, including not only general damages, but also special damages which arise out of bodily injuries, such as medical or funeral expenses and loss of income or support. Damages for loss of consortium also should be included. [Emphasis added.] [Footnote omitted.]
See also, W. McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La.L.Rev. 691 (1983).
A review of the jurisprudence from other jurisdictions is helpful in construing our UM statute. In State Farm Mutual Automobile Insurance Company v. Mendenhall, 164 Ill.App.3d 58, 517 N.E.2d 341, 344 (1987), the court interpreted Illinois' UM statute, which is almost identical to Louisiana's, as follows:
The supreme court has consistently held that the purpose of uninsured motorist coverage is compensatory.
"Rather, we believe the reasonable purpose of the statutory uninsured motorist provisions is to assure that compensation will be available to policyholders, in the event of injury by an uninsured motorist, to at least the same extent compensation is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law." (Putnam v. New Amsterdam Casualty Co. (1970), 48 Ill.2d 71, 89, 269 N.E.2d 97, 106.)
... The purposes of punitive damages are punishment and deterrence and "are awarded primarily to punish the offender and to discourage other offenses." (Mattyasovszky v. West Towns Bus Co. (1975), 61 Ill.2d 31, 35, 330 N.E.2d 509, 511.) Mendenhall in oral argument suggested that the offending driver might be punished if State Farm was successful in a subrogation claim. This is wild-eye conjecture which lacks practical application. The purpose of the uninsured motorist coverage is to compensate for bodily injury, sickness, or disease, including death resulting therefrom. It is not intended *1078 to punish the insured's insurance company for the wrongdoings of others. [Underscoring added.]
In Braley v. Berkshire Mutual Insurance Company, 440 A.2d 359, 362-363 (Me. 1982), the court interpreted Maine's UM statute, which is similar to Louisiana's, as follows:
This interpretation of the contract language to exclude punitive damages is further bolstered by our observations two years ago concerning the Legislature's intent in passing Maine's uninsured motorist statute, upon which the contract provision is based. In Wescott v. Allstate Insurance, Me., 397 A.2d 156 (1979), our Court directed that the statute be construed to assure that a person injured by an uninsured motorist be able to recover up to "the total amount of his damages." Id. at 167. What is meant by the total amount of his damages is made clear by the opinion:
The obvious design of our uninsured vehicle coverage statute is to protect a responsible injured motorist against the hazards presented by the operation of motor vehicles where injuries are inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene and in most instances is financially unable to furnish adequate compensation for the injuries caused in the accident. The legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance company for a premium.

Id. at 166. We further stated that the legislation was intended to protect an insured "to the extent of his actual loss." Id. at 170. Punitive damages compensate neither actual loss nor injuries which would otherwise go without redress. Therefore, insurance companies providing coverage under provisions mandated by the uninsured motorist statute should not be charged under those provisions with liability for punitive damages.
. . . .
While in the liability insurance context there is at least the possibility of raising the insured's premiums thereby achieving some small deterrent effect, in the instance of uninsured motorist coverage, the claimant is the insured, so no deterrent effect is possible through the raising of premium charges.
Although an insurance company theoretically has a right of recovery against the tortfeasor under an uninsured motorist provision, the probability of such a recovery is negligible. In this case, for instance, the tortfeasor's whereabouts are unknown. Such is precisely the case contemplated by the statute which was designed to protect against the motorist "who is uninsured or has fled the scene and in most instances is financially unable to furnish adequate compensation." Wescott v. Allstate Insurance, supra, at 166. Realistically, then, no deterrent effect can be anticipated from an award of punitive damages against an insurance company under an uninsured motorist provision. [Underscoring added.]
In State Farm Mutual Automobile Insurance Company v. Daughdrill, 474 So.2d 1048 (Miss.1985), the Mississippi Supreme Court was called upon to determine if the Mississippi UM statute, which required the insurer to provide UM coverage to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death, mandated coverage for punitive damages. The court noted that the statute had been amended to add UM coverage for property damages and concluded the statute did not provide coverage for punitive damages with the following rationale:
The enlargement of Section 83-11-101 by the legislature to include the recovery of property damages in addition to those for bodily injury or death expresses, we think, the legislature's initial intention to restrict uninsured motorist coverage to those items specifically enumerated in the statute; otherwise, had it been a general statute so as to include all damages the 1979 amendment would have been unnecessary.... We conclude the *1079 legislature intended by Mississippi Code Annotated, Section 83-11-101 and its amendment to include only those items therein specifically enumerated and because punitive damages were not mentioned, they were necessarily excluded.
. . . .
Obviously the purpose of uninsured motorist insurance is to benefit the insured by making available compensation for his property damage, bodily injuries or death. [Daughdrill, 474 So.2d at 1051.] [Underscoring added.]
The Louisiana UM statute was amended by Act 439 of 1987 to add La.R.S. 22:1406(D)(1)(d) which authorized property damage coverage under UM coverage. The Daughdrill rationale is applicable to the Louisiana UM statute.
In Laird v. Nationwide Insurance Company, 134 S.E.2d 206, 209-210 (S.C.1964), appears the following:
The policy here in question carried the uninsured endorsement required by the statutes and no additional charge was made to the policy holder for such endorsement because to make an additional charge would have been contrary to the statute. Section 46-750.14 of the Code.... By the insuring clause, the appellant agreed to pay to the insured all sums which the insured should be legally entitled to recover as damages from the owner or operator of an uninsured automobile, because of bodily injury. In fact, Section 46-750.14 refers to Section 46-750.13 which requires "bodily injury liability insurance". We think that the Legislature intended, by the Uninsured Motorist Statutes, to require the insurer to pay to the insured all sums which such insured shall be legally entitled to recover as damages, only for bodily injury from the owner or operator of an uninsured motor vehicle....
What damages compensate for bodily injury? In Bowers v. Charleston & W.C. Ry. Co., 210 S.C. 367, 42 S.E.2d 705, this Court said:
"Actual or compensatory damages are damages in satisfaction of, or in recompense for, loss or injury sustained. Punitive damages are allowed in the interest of society in the nature of punishment and as a warning and example to deter the wrongdoer and others from committing like offenses in the future. * * *"
In Shuler v. Heitley, 209 S.C. 198, 39 S.E.2d 360, it was held that exemplary or punitive damages are not given with a view to compensation but are under certain circumstances awarded, in addition to compensation as a punishment to the defendant and as a warning to other wrongdoers.
There is no provision in the Uninsured Motorist Statutes which, either expressly or by implication, requires that the uninsured motorist endorsement must insure against any and all liability. There is nothing said or implied that the insurer would be liable for punitive or exemplary damages. If such damages had been in contemplation of the Legislature, it could have easily provided therefor in said statutes. The measure of damages, therefore, which the respondent was entitled to recover against the appellant was the amount which would compensate her for bodily injury sustained, and such damages are designated as actual or compensatory damages. We cannot read into the Uninsured Motorist Statutes provisions which are not required thereby. If the statutes in question fail to accomplish the legislative purpose, the remedy lies with the Legislature and not with the Courts.
We conclude that the Uninsured Motorist Statutes and the policy of insurance issued in conformity therewith, do not provide for the payment of punitive damages to a person receiving bodily injury as as [sic] a result of a collision with an uninsured motorist. The Trial Judge was in error in not so holding. [Underscoring added.][2] *1080 See also State Farm Mutual Insurance Company v. Kuharik, 179 Ga.App. 568, 347 S.E.2d 281 (1986); California State Automobile Association Inter-Insurance Bureau v. Carter, 164 Cal.App.3d 257, 210 Cal.Rptr. 140 (5th Dist.1985); Suarez v. Aguiar, 351 So.2d 1086 (Fla.App. 3d Dist. 1977), cert. dism., 359 So.2d 1210 (1978).[3]CONTRA: Lavender v. State Farm Mutual Automobile Insurance Company, 828 F.2d 1517 (11th Cir.1987) (interpreting Alabama law); Stewart v. State Farm Mutual Automobile Insurance Company, 104 N.M. 744, 726 P.2d 1374 (1986); Mullins v. Miller, 683 S.W.2d 669 (Tenn.1984); Lipscombe v. Security Insurance Company of Hartford, 213 Va. 81, 189 S.E.2d 320 (1972).
After considering all of the above authorities, we conclude that the Louisiana UM statute [La.R.S. 22:1406(D) ] does not mandate coverage for exemplary damages because: (1) its legislative history does not indicate that such coverage was intended by the legislature; (2) when La.R.S. 22:1406(D)(1)(a) is construed in pari materia with La.R.S. 22:1406(D)(2)(b), La.R.S. 32:900 and Act 439 of 1987, it is apparent that such coverage was not intended; (3) the jurisprudence contemporaneously interpreting La.R.S. 22:1406(D) clearly shows it was intended to require coverage only for the compensatory damages of bodily injury, sickness, disease and death (and, thus, at all times pertinent hereto, it did not provide coverage for compensatory property damage or for exemplary damage); (4) the majority view in other jurisdictions is that UM statutes do not require such coverage; and (5) most importantly, the language of the UM statute specifically states it is "for the protection of persons insured thereunder" and, thus, was not intended for punishment of the tort-feasor. For these same reasons, the holdings to the contrary in Bauer v. White and the instant case are wrong and should be overruled.

INTERPRETATION OF UM POLICY PROVISIONS
The Aetna policy provided, in pertinent part, as follows:
PART CUNINSURED MOTORISTS COVERAGE
We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by a covered person; and
2. Caused by an accident.
The Acceptance policy provided, in pertinent part, as follows:
In accordance with the provision of Section 1406 of Title 22 of the Louisiana Revised Statutes of 1950, Subsection D, amended, which permits the insured named in the policy to reject the Uninsured Motorists Coverage or select a limit for such coverage lower than the limit for Bodily Injury Coverage in the policy, the undersigned insured (and each of them) does hereby reject such coverage, or (if amounts are inserted) selects limits of $25,000 each person, $25,000 each accident for said insurance, being the insurance provided for protection of persons insured under this policy who would legally be entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including *1081 death resulting therefrom. [Emphasis added.]
The majority holds that the language of these policies is "sufficiently broad enough to encompass exemplary damage and do not attempt to specifically exclude such coverage." The majority concludes "that to effectuate the purposes of LSA-C.C. art. 2315.4, the Louisiana UM Statute, LSA-R.S. 22:1406(D), and as well as clear reading of the policies, exemplary damages are recoverable under both uninsured motorist policies."
The rules for interpreting a contract are found in La.C.C. art. 2045 et seq. Although a contract of insurance must provide the minimun amount of coverage required by statute, the parties may contract for additional coverage, if such coverage is not against good public policy. A contractual provision is null if it violates a rule of public order. La.C.C. art. 2030. The general rules for interpreting contracts of insurance have been set forth in Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La.1988), as follows:
There are certain elementary legal principles which apply to the interpretation of insurance policies. An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties.... If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written....
An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another.... If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer.... However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. [Citations omitted.]
Further, courts should not strain to find coverage where none exists. Cell-O-Mar, Inc. v. Gros, 479 So.2d 386 (La.App. 1st Cir.1985), writs denied, 481 So.2d 1332 and 1333 (La.1986).
Aetna's policy provides that it "will pay damages which" an insured "is legally entitled to recover from the ... operator of an uninsured motor vehicle because of bodily injury ... [s]ustained by" an insured "and... [c]aused by an accident." [Emphasis added.] Exemplary damages are not a bodily injury sustained by an insured and caused by an accident. Exemplary damages are not awarded because of bodily injury. Braley, 440 A.2d at 361; Brown v. Western Casualty and Surety Company, 484 P.2d 1252 (Colo.App.Div. II 1971). This language is clear and explicit, leads to no absurd consequences and no further interpretation can be made to determine the parties' intent. La.C.C. art. 2046. The Aetna policy does not provide coverage for exemplary damages under its UM provisions. CONTRA: Hutchinson v. J.C. Penney Casualty Insurance Company, 17 Ohio St.3d 195, 478 N.E.2d 1000 (1985).
The Acceptance policy tracks the language of the UM statute. Therefore, it must be interpreted in the same manner as the statute. California State Automobile Association Inter-Insurance Bureau v. Carter, 210 Cal.Rptr. at 144-145. The Acceptance policy does not provide coverage for exemplary damages under its UM provisions.[4]
In Bauer v. White, 532 So.2d at 508-509, this court found that Bauer's UM insurance contract provided coverage for exemplary damages with the following rationale:
Even if the uninsured motorist statute should be construed not to require coverage *1082 for exemplary damages, still it seems to us that the insurance policy in question did cover these damages. The policy provided coverage to its insured for "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." Exemplary damages, once proven, are "damages for bodily injury an insured is legally entitled to collect." If it be contended that this phrase of the insurance policy is ambiguous, the rule that ambiguities in insurance contracts must be construed in favor of the insured would constrain us to reach the same conclusion.
. . . .
We find that in this case State Farm has contractually agreed to stand in the shoes of the tortfeasor, White, and pay those damages which its insured, Bauer, would have been able to recover from the uninsured motorist, White, as if he had sued White himself. Moreover, the punishment or deterrent effect of exemplary damages is not ignored under this analysis since State Farm may subrogate and bring an action against White for the full measure of damages that it agreed to indemnify Bauer, its insured.
Therefore, we hold that exemplary damages may be awarded to an insured under an uninsured motorist provision where the insurer of the policy promises to pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle and caused by an accident. [Emphasis added.]
In the instant case, the Aetna policy only covers damages an insured is entitled to recover from the UM driver because of bodily injury sustained by the insured and caused by the accident. This language is substantially different from that set forth in the Bauer v. White opinion, and, thus, Bauer v. White, is distinguishable and not controlling.

PUBLIC POLICY CONSIDERATIONS
The majority holds that "[p]ublic policy is better served by giving effect to the insuance contract rather than by creating an exclusion based on a judicial perception of public policy not expressed by the legislature" and that "public policy does not preclude insurance coverage of exemplary damage awards under LSA-C.C. art. 2315.4."
Some courts have held it is against good public policy to allow parties to contract for insurance coverage of exemplary damages. In Dubois v. Arkansas Valley Dredging Company, Inc., 651 F.Supp. 299, 302-303 (W.D.La.1987), appears the following:
The question for our determination is: Does the Aetna policy provide coverage to its insured if the actions of its insured are so negligent so as to trigger an award for punitive damages? The answer is in the negative.
Assuming, but not deciding, that AVD's actions were so willful and wanton as to invoke properly a punitive damage penalty under maritime law and further assuming, but not deciding, that Aetna's policy would provide coverage to AVD for such punitive damages, enforcement of the insuring provisions of the policy would be contrary to public policy. We must remember that the plaintiff has been fully compensated for his direct injuries. Punitive damages are only recoverable if the defendant's actions are so lacking that the defendant must be punished and must be deterred by that punishment from again committing the same acts. One would hope others will also be so deterred.... The purpose of a punitive damage award is to punish one for heinous behavior and deter others from pursuing a similar course of conduct. The purpose is not to compensate the plaintiff for that has already been accomplished. Admittedly, the plaintiff's compensation is a secondary result but is not the primary purpose of the rule. The purpose is thwarted if the wrongdoer can cover his tracks by dragging an insurance policy behind him. No better analysis can be offered than that submitted by Judge John Wisdom in Northwestern National Gas Co. v. McNulty, 307 F.2d 432, 441 (5th Cir.1962).

*1083 Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties will be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.
The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.
For these reasons we need not analyze the punitive damage aspect of the case as it relates to Aetna. Public policy will not allow recovery. See also an unpublished opinion from Judge Henry Mentz in Smith v. Front Lawn, No. 83-5147 (E.D.La. September 29, 1986). [Underscoring added.]
See also American Surety Company of New York v. Gold, 375 F.2d 523 (10th Cir.1966) and Burns v. Milwaukee Mutual Insurance Company, 121 Wis.2d 574, 360 N.W.2d 61 (App.1984).
Finally, in C. Huckabay, supra, at p 1178, appears the following:
Finally, in support of denying the insurability of punitive damages in Louisiana, the solid reasoning provided for in McNulty should be considered again. The court found that the underlying theory of punitive damages in Florida is punishment and deterrence. The court went on to state that if one is permitted to insure himself against punitive damages then the basic premise behind such damages is destroyed. The tortfeasor will not be punished because he does not have to pay any penalty. Similarly, other drunk drivers in the future would continue to menace the highways because they have not been deterred. The people who are actually punished are the consumers whose rates would continue to rise.
Of course one can argue, as did the Lazenby court, that no one has proven that denying insurance coverage for punitive damages has actually served as a punishment or deterrence. However, it seems more logical and consistent with the nature of punishments for the courts to require proof that insurance coverage does not hinder the objectives of punishment and deterrence of punitive damages before it allows one to acquire such coverage. Also, as seen inMcNulty,no one would argue that a person can and should be allowed to insure himself against criminal penalties since that would defeat the whole purpose of imposing such a penalty. The same logic should be employed when discussing punitive damages because they are civil penalties imposed for the purpose of punishment. Like criminal penalties, punitive damages are imposed because society is outraged by the defendant's conduct and does not want the defendant nor others in the future to commit the same offense. If a person is permitted to insure himself against such damages, then the policies of imposing a punishment and deterring similar future conduct would be rendered impotent. [Underscoring added.] [Footnote omitted.]

VALIDITY OF POLICY EXCLUSIONS
The majority reaffirms the statement of law in Bauer v. White that "[t]he purposes *1084 of the uninsured motorist statute are all furthered by liberally construing the statute to include exemplary damages as well as compensatory damages in those `damages... because of bodily injury' that insurers are required to pay their insured." [Emphasis added.] Further, the majority quotes extensively from Morvant v. United States Fidelity & Guaranty Company, 538 So.2d 1107 (La.App. 5th Cir. 1989), and states that Morvant holds "that exemplary damages are recoverable from the insured victim's uninsured motorist insurer... unless such damages are specifically excluded by clear and unqualified language in the policy." These statements from Bauer and Morvant are inconsistent as a matter of law. If the UM statute is interpreted "to include exemplary damages... in those `damages ... because of bodily injury' that insurers are required to pay their insureds", then such coverage cannot be legally excluded from the policy. Block v. Reliance Insurance Company, 433 So.2d at 1044; Fisher v. Morrison, 519 So.2d at 809. Then, in a footnote, the majority observes that they are not called upon to decide if exemplary damages can be validly excluded from UM coverage and declare that they "specifically do not address that issue." However, when discussing the proper interpretation of the Aetna and Acceptance policies, the majority observes that the "policy provisions are sufficiently broad enough to encompass exemplary damage and do not attempt to specifically exclude such coverage." Query: Since the exclusion issue was not addressed, why does the opinion repeatedly refer to it?
However, and most significantly, the majority holds that a "clear reading" of the language of the Acceptance policy shows that exemplary damages are recoverable under the policy. The insuring language of the Acceptance policy is essentially identical with the operative language of the UM statute. The Acceptance insurance policy states that insurance is being provided for "protection of persons insured under this policy who would legally be entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom." The UM statute mandates that UM policies issued for a vehicle registered or garaged in Louisiana must provide "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom...." Query: Since the majority construes the language of the Acceptance policy as requiring UM coverage for exemplary damage, how could the majority construe the essentially identical language of the UM statute as not requiring UM coverage for exemplary damages?[5]

CONCLUSION
In the instant case, the trial court jury rendered a verdict in favor of the tort victim (Sharp) and against the drunk driver (Daigre) for $94,200 in compensatory damages and $28,000 in exemplary damages, for a total award of $122,200. The victim settled his claims against the drunk driver and the drunk driver's liability insurer for the single limit policy amount of $100,000. The majority has now cast the victim's UM insurers (Aetna and Acceptance) for the balance of the exemplary damage award of $22,200. As pointed out by the separate dissenting opinion of Judge Shortess, because the victim has released the drunk driver and his liability insurer, the victim's UM insurers cannot recover from the drunk driver the sums they are required to pay to the victim for exemplary damages. Thus, the practical effect of the majority's interpretation of La.C.C. art. 2315.4 and the UM statute in the instant case is that the *1085 victim's insurers will be punished by a $22,200 exemplary damage award, the victim will receive a bonus of $28,000 over his compensatory damages of $94,200, the drunk driver will pay nothing, and there will be no deterrence. This result is unjust and extraordinarily poor public policy.
Accordingly, we respectfully dissent.
NOTES
[1] Sheila S. Sharp was awarded $2,800 for loss of consortium.
[2] The Louisiana Supreme Court in Johnson v. Fireman's Fund Insurance Company, 425 So.2d 224 (La.1982), determined that a UM carrier was liable to reimburse injured employee by repeatedly emphasizing the purpose of UM coverage. The court stated:

We conclude that when an uninsured motorist carrier becomes liable under its policy, it is required to pay "damages" within the meaning of La.R.S. 23:1101 to the person protected. Although uninsured motorist coverage is provided for the protection of persons injured by uninsured or underinsured tortfeasors, and not for the benefit of such wrongdoers, the statutorily specified coverage guarantees the injured person's recovery of damages as if the tortfeasor had been insured. La.R.S. 22:1406(D)(1)(a). Subject to conditions not granted the tortfeasor, the uninsured motorist carrier is independently obliged to repair the same damage which the tortfeasor has wrongfully caused. By effect of law and the delivery or issuance for delivery of automobile liability insurance, both the uninsured motorist carrier and the tortfeasor are obliged to the same thing. Hoefly v. Government Employee's Ins. Co., 418 So.2d 575 (La.1982). The fact that the uninsured motorist carrier is bound by the combined effect of the tortfeasor's wrongful act, the uninsured motorist statute, and the carrier's delivery or issuance for delivery of automobile liability insurance, while the tortfeasor is obliged merely because of his delict, does not prevent them from being obliged to the same thing. (Emphasis supplied) [425 So.2d at 227]
[3] See Footnote 4, infra.
[4] We note, however, that, in the instant case, we are not called upon to decide whether or not an insurer can exclude exemplary damages under its uninsured motorist protection and specifically do not address that issue. In the case sub judice, each policy did not attempt to exclude coverage for exemplary damages in its uninsured motorist provisions.
[5] The jury rendered a verdict in favor of Sharp for $94,200.00 in compensatory damages and $28,000.00 in exemplary damages, for a total award of $122,200.00. Sharp settled his claims against Daigre and United for $100,000.00. Therefore, Aetna and Acceptance are liable to Sharp for the remaining $22,200.00.
[6] The petition only prayed for interest from date of judicial demand. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984).
[1] For a complete legislative history of La.R.S. 22:1406(D), see W. McKenzie and H. Johnson, Insurance Law and Practice, 15 Louisiana Civil Law Treatise § 101 (1986). The present pertinent language of La.R.S. 22:1406(D)(1)(a) is identical to the original act, except that the words "or underinsured" were added.
[2] In Carroway v. Johnson, 245 S.C. 200, 139 S.E.2d 908 (1965), the court recognized the distinction between the purposes of UM coverage and liability coverage and held that a liability policy in which the insured agreed to pay "all sums" which the insured tort-feasor "shall become legally obligated to pay as damages" provided coverage to the insured tort-feasor for punitive damages. Subsequently, the South Carolina legislature amended South Carolina's UM law to provide that punitive damages would be included under UM coverage. Daughdrill, 474 So.2d at 1054.
[3] In Adams v. Brannan, 500 So.2d 236 (Fla.App. 3d Dist.1986), rev. denied, 511 So.2d 297 (Fla. 1987), the court applied North Carolina law and held that punitive damages were recoverable under a UM policy. The court made the following observations about Suarez at 500 So.2d 239, n. 3:

3. This reasoning may well indicate that this court was in error in applying the liability rule to the uninsured motorist situation as a matter of Florida law in Suarez, 351 So.2d at 1088 and Arnette v. Continental Ins. Co., 490 So.2d 158 (Fla. 3d DCA 1986). However, that issue is not now before us.
See Aetna Casualty & Surety Co. v. Wackenhut Corp., 442 So.2d 192 (Fla.1983).
[4] Recovery of exemplary damages has been allowed under UM policy coverage in other states where the policy language was different from the policies in the instant case. In Home Indemnity Company v. Tyler, 522 S.W.2d 594 (Tex. App. 14th Dist.1975), the insurer issued a standard UM policy which provided that it would "pay all sums which the insured ... shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile...." [Emphasis added.] The court found this language was broad enough to cover exemplary damages. That language is similar to the language of the policy set forth in Morvant v. United States Fidelity and Guaranty Company, 538 So.2d 1107 (La.App. 5th Cir.1989).
[5] If the UM statute is interpreted to require coverage for exemplary damages in UM policies, then discussions of the proper interpretation of the language of the policy and the public policy for such coverage become moot. Under Louisiana law, if the coverage is statutorily mandated, it makes no difference what the insurance policy actually provides because the mandated coverage is automatically read into it, and the statute mandating the coverage is the public policy of the state.