538 So.2d 1107 (1989)
Elery MORVANT
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, et al.
No. 88-CA-677.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1989.
Writ Denied April 14, 1989.
George M. Papale, Stumpf, Dugas, Le Blanc, Papale & Ripp, Gretna, for plaintiff-appellant.
James C. Murphy, Jr., Appeal Counsel, Linda S. Harang, Cornelius, Sartin & Murphy, New Orleans, for defendant-appellee, U.S. Fidelity & Guar. Co.
Before BOWES, DUFRESNE and GOTHARD, JJ.
BOWES, Judge.
Plaintiff-appellant, Elery Morvant (hereinafter Morvant), appeals a judgment of the district court in favor of defendant, United States Fidelity and Guaranty Company (hereinafter USF & G), granting the motion for partial summary judgment filed by USF & G. We reverse and remand the case for trial.
Morvant was injured in a vehicular collision with Joseph V. Smith on June 12, 1985. Morvant was driving a company vehicle owned by his employer, Rental Ease, Inc., and insured by USF & G. The USF & G policy included uninsured/underinsured motorist coverage. Smith was killed in the collision. Suit was filed against the Estate of Joseph V. Smith and USF & G, alleging Smith's negligence as the cause of the accident, as well as Smith's uninsured status.
In a second supplemental and amending petition filed nearly two years later, Morvant alleged that Smith was intoxicated at the time of the accident and asked for exemplary damages in the amount of $150,000.00. USF & G filed a motion for partial *1108 summary judgment, asserting that plaintiff was not entitled to recover exemplary damages under LSA-C.C. art. 2315.4 from USF & G. After argument, the trial court granted judgment in favor of USF & G, dismissing the portion of the demand against USF & G as it related to exemplary damages. Morvant appeals.
The policy endorsement providing for UM coverage contained the following language:
"B WE WILL PAY
1 We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injuries sustained by the insured caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured motor vehicle." [Emphasis supplied]
In his oral, but recorded, reasons for judgment, the trial judge found that the UM statute was to be strictly construed. The trial judge stated (in pertinent part):
"Interestingly enough it has been the theory, at least in our State as I appreciate it, punitive, or exemplary damages likewise have always been strictly construed.... The concept [of exemplary damages] as I appreciate the legislature's intent, was to punish those people who drive while intoxicated. You drive while intoxicated, and cause injury to another, you are further hit with a penalty in addition to the normal amount of damages that you have to pay. So, these are layered on top of, and the original concept was, I am sure, to punish the drunk driver."
In interpreting the policy language, the court found:
"The damages that they will pay, `all sumswill pay all sums the insured is legally entitled to recover as damages.' And it goes on to explain damages: `Damages must result from bodily injuries.' The damages, I think the exemplary damages result from the fault, if you will, the driving while intoxicated by the motorist. Those are not damages owed to the insured that result from bodily injury, but damages owed to him because the man was drinking and driving, and as a consequence can be tagged with extra penalties, layered on top penalties because of what he did in contravention of the law; namely, driving while intoxicated."
The court found that exemplary damages were not contemplated by the UM laws; further, the court construed the policy language itself to mean that the insurer intended to limit damages payable under the UM provisions to damages resulting from bodily injury, and not exemplary damages.
Morvant has alleged, on appeal, that it was error for the trial court to find that provisions of the UM statute, LSA-R.S. 22:1406(D) and C.C. art. 2315.4 were to be strictly construed, and error for the court to conclude that exemplary damages do not result from bodily injury, as well as its finding that the policy language providing for bodily damages was too narrow to include exemplary damages.
Both Morvant and USF & G have cited cases from other jurisdictions in support of their respective positions. While we find these various opinions interesting and helpful in a sense of pointing toward the direction we should follow (depending on which argument we favor), they do not, of course, dispose of the case before us. LSA-R.S. 22:1406 states in pertinent part:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder *1109 who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.
LSA-C.C. art. 2315.4 states:
Art. 2315.4 Additional damages; intoxicated defendant
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
Several circuit courts have expressly stated that liability policies (as distinguished from UM coverage) cover awards for exemplary damages granted under LSA-C.C. 2315.4 unless expressly excluded. See Creech v. Aetna Cas. & Sur. Co., 516 So.2d 1168 (La.App. 2 Cir.1987); Louviere v. Byers, 526 So.2d 1253 (La.App. 3 Cir. 1988); Falgout v. Wilson, 531 So.2d 492 (La.App. 1 Cir.1988). (The question was not directly addressed by this Court in Levet v. Calais & Sons, Inc., 514 So.2d 153 [La.App. 5 Cir.1987], now lodged in the Louisiana Supreme Court on writs).
Recently, the First Circuit expanded on this jurisprudence and answered affirmatively the question that is directly before us nowi.e., that liability for exemplary or punitive damages is included under the provisions of UM coverage in the insurance contract. See Bauer v. White, 532 So.2d 506 (La.App. 1 Cir.1988).
We find that we are in accord with the First Circuit on this issue.
LSA-C.C. art. 2315.4 has a dual purpose in our opinion: to penalize (and therefore deter) the drunk driver, as well as to provide damages for the victim of such driver. As the court in Creech, supra, pointed out "Although the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and, from the plaintiff's standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him."
The court continued:
It is true that the purpose of punitive damages is to discourage egregious conduct. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled "punitive". Fagot v. Ciravola [445 F.Supp. 342 (E.D.La.1978) ], supra. Whether precluding insurance coverage of exemplary damages assessed against drunk drivers will have a greater deterrent effect on wrongdoing than holding their insurers liable as well is a matter better left to legislative investigation than judicial speculation.
We find that compensation for the victim plaintiff is an aspect of LSA-C.C. art. 2315.4, which is just as important as is deterrence. Moreover, in cases such as the one at bar, deterrence is a moot issue to a deceased drunk driver. In effect, were we to deny exemplary damages to the plaintiff because the deterrent effect is seemingly absent, as the defendant insurer urges, we would defeat one of the purposes of the statute and the purpose of obtaining UM coverage. This would also penalize the victim plaintiff who paid the stipulated UM premium to the defendant insurer who agreed that "we will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle." The very purpose of obtaining and paying an extra premium for UM coverage is to protect oneself from the failure of the other motorist to adequately insure himself. The appellee insurer also argues, in effect, that it is not *1110 fair or logical for it to have to pay exemplary damages under UM coverage because it has no chance to review the record of or assess the insurability of the uninsured motorist, whereas it does have such opportunity under liability coverage. We disagree. The insurer never knows who it is insuring against under UM coverage. This is a calculated risk, in any event, so this argument must fall. Defendant's reasoning would defeat the ultimate purpose of UM coverage.
This purpose was enunciated by the Supreme Court in Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982):
Thus, the object of the uninsured motorist statute is to promote full recovery of damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Niemann v. Travelers Ins. Co., 368 So. 2d 1003 (La.1979); Whitten v. Empire Fire and Marine Ins. Co., 353 So.2d 1071 (La.App.Cir.1977). [Emphasis Supplied]
The central purpose of ... the uninsured motorist statute is the protection of the injured person.
. . . . .
The uninsured motorist act protects him by making available in all situations, not just those that are work-connected, an opportunity for some recovery in place of what he would have gotten if the tortfeasor had been insured. See, 2A A. Larsen, The Law of Workmen's Compensation, § 71.23(h) (Desk Ed.1982).
In Johnson, our Supreme Court apparently had no difficulty finding that a UM carrier was liable to reimburse a worker's compensation carrier for amounts paid to an injured employee by repeatedly emphasizing the purpose of UM coverage. The court continued:
We conclude that when an uninsured motorist carrier becomes liable under its policy, it is required to pay "damages" [within the meaning of La.R.S. 23:1101] to the person protected. Although uninsured motorist coverage is provided for the protection of persons injured by uninsured or underinsured tortfeasors, and not for the benefit of such wrongdoers, the statutorily specified coverage guarantees the injured person's recovery of damages as if the tortfeasor had been insured. La.R.S. 22:1406 D(1)(a). Subject to conditions not granted the tortfeasor, the uninsured motorist carrier is independently obliged to repair the same damage which the tortfeasor has wrongfully caused. By effect of law and the delivery or issuance for delivery of automobile liability insurance, both the uninsured motorist carrier and the tortfeasor are obliged to the same thing. Hoefly v. Government Employee's Ins. Co., 418 So.2d 575 (La.1982). The fact that the uninsured motorist carrier is bound by the combined effect of the tortfeasor's wrongful act, the uninsured motorist statute, and the carrier's delivery or issuance for delivery of automobile liability insurance, while the tortfeasor is obliged merely because of his delict, does not prevent them from being obliged to the same thing. [Emphasis supplied]
Because the UM carrier is independently obliged to repair the same damage which the tortfeasor has wrongfully caused, Johnson, supra, we have no difficulty in finding that such damages include exemplary damages, for which the tortfeasor is liable. We see no legislative intent to preclude insurance coverage of exemplary damages, either in liability policies or under UM coverage. In fact, we approve of and adopt the views in this regard so ably stated by the Second Circuit in Creech, supra:
Nowhere in LSA-C.C. Art. 2315.4 does the legislature prohibit insurance coverage of exemplary damages. The legislature is well aware that motorists are required to have automobile insurance and that these policies generally provide protection against claims of any character not intentionally inflicted. The legislature could easily have provided that no *1111 insurance coverage shall be allowed to cover exemplary damages, but did not do so.
There is more than one public policy. One such policy is that an insurance company which accepts a premium for covering all liability for damages should honor its obligation.
. . . . .
Public policy is better served by giving effect to the insurance contract rather than by creating an exclusion based on a judicial perception of public policy not expressed by the legislature. We hold that public policy does not preclude insurance coverage of exemplary damage awards under LSA-C.C. Art. 2315.4.
Further, we agree with the court in Bauer, supra, that R.S. 22:1406(D) (UM coverage) is to be liberally construed, as was indicated by our Supreme Court in Hoefly v. Government Employee's Insurance Co., 418 So.2d 575 (La.1982) and, therefore, the trial court erred in strictly construing the statute so as to exclude exemplary damages.
The First Circuit in Bauer stated:
The purposes of the uninsured motorist statute are all furthered by liberally construing the statute to include exemplary damages as well as compensatory damages in those "damages ... because of bodily injury" that insurers are required to pay their insureds.
State Farm argues that the inclusion of exemplary damages under the uninsured motorist statute would thwart the purpose of La.Civ.Code art. 2315.4 to punish those who cause damages while driving under the influence of alcohol and to deter others from engaging in such conduct in the future. However, this argument overlooks the uninsured motorist carrier's subrogation rights against the person causing the damage. Under its subrogation rights,2 the uninsured motorist carrier may pursue and place upon the uninsured motorist the burden of the exemplary damages, thereby carrying out the true intent of La.Civ. Code art. 2315.4.
Finally, in considering whether exemplary damages are damages "resulting from bodily injury," the court in Bauer opined:
Even if the uninsured motorist statute should be construed not to require coverage for exemplary damages, still it seems to us that the insurance policy in question did cover these damages. The policy provided coverage to its insured for "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." Exemplary damages, once proven, are "damages for bodily injury an insured is legally entitled to collect." If it be contended that this phrase of the insurance policy is ambiguous, the rule that ambiguities in insurance contracts must be construed in favor of the insured would constrain us to reach the same conclusion. Bozeman v. Commonwealth Land Title Insurance Company, 470 So.2d 465 (La.App. 1st Cir.), writ denied, 475 So.2d 359 (La.1985); Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580 (1968). It would be a very simple matter for insurance carriers to write their policies so as to specifically exclude coverage for exemplary damages.3 The present policy did not contain any such limitation, and in our opinion the policy coverage includes awards of exemplary damages up to the policy limits. [Emphasis Supplied]
Learned counsel for the defendant insurer has very astutely and ably made the same arguments to us, as were undoubtedly made to the court in Bauer, regarding the "bodily injury" provision (and others) and we note that the policy, in our case, also does not contain any exclusionary clause for exemplary damages.
We find that we agree completely with our brothers of the First Circuit in the language from Bauer quoted above. Consequently, we adopt it as our own.
Accordingly, we hold that the trial court erred in finding that exemplary damages do not result from bodily injury. We emphasize the obvious which has been pointed out by every court considering the question: *1112 the legislature has not declared it to be public policy that insurance coverage, be it liability or UM coverage, may not encompass exemplary damages. As pointed out in Creech, this is a matter better left to legislative determination rather than judicial speculation.
Therefore, we find that exemplary damages are recoverable from the insured victim's UM carrier, up to the policy limits of the UM coverage, where the insurer promises to pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle, unless such exemplary damages are specifically excluded by clear and unqualified language in the policy.
For the foregoing reasons, the partial summary judgment rendered by the trial court is annulled and set aside and the entire case is remanded to the trial court for further proceedings consistent with this opinion. All costs are assessed to appellee.
JUDGMENT ANNULLED, SET ASIDE AND CASE REMANDED.