555 So.2d 1361 (1990)
Harvey SHARP, Jr. and Sheila Sharp
v.
Richard C. DAIGRE, Jr., et al.
No. 89-C-1740.
Supreme Court of Louisiana.
February 5, 1990.
James Funderburk, Houma, Charles F. Wartelle, Laplace, Duval, Funderburk, Sundbery & Lovell, Houma, Richard L. Edrington, Accardo, Edrington & Golden, Laplace, for applicants.
Joseph Weigand, Jr., Weigand, Weigand & Meyer, Houma, for respondents.
WATSON, Justice.
After a pretrial settlement for insurance policy limits of $100,000 with the drunken driver who ran into the rear of his automobile, Harvey J. Sharp, Jr. was awarded excess damages pursuant to the underinsured motorist provisions of his own automobile liability policies. The issue is whether UM insurers are liable for the exemplary damages allowed by LSA-C.C. art. 2315.4.[1]

*1362 FACTS
On May 17, 1986, Sharp's vehicle was stopped at a red light in Houma, Louisiana, where it was rear-ended by a car driven by Richard G. Daigre, Jr. at a speed of approximately 30 m.p.h. Daigre had consumed six cocktails in the seven hours before the 11:00 p.m. accident. Daigre failed to see Sharp's automobile, because he was trying to insert a tape in his cassette deck and his blood alcohol concentration was .17%. Daigre was charged with driving while intoxicated.[2]
Sharp's automobile sustained $900 in damages, and he suffered a ruptured disc in his lower back. After undergoing surgery, Sharp still experienced pain and was forced to close his used car business. His pain and the restrictions imposed by his orthopedic surgeon prevented him from doing the detail work and minor repairs that were necessary to prep the cars for sale.
Sharp and his wife Sheila filed a suit for damages, naming as defendants: (1) Richard G. Daigre, Jr., the driver of the car that rear-ended him; (2) United Service Automobile Association, Daigre's automobile liability carrier; (3) Aetna Life & Casualty Insurance Co., Sharp's personal liability and UM carrier; and (4) Acceptance Insurance Co., the garage liability carrier for Canal Auto Sales, Sharp's used car business.[3] USAA offered full policy limits of $100,000 in settlement. Sharp released USAA and Daigre, reserving all rights against Aetna and Acceptance.
Sharp, Aetna and Acceptance stipulated before trial that Daigre was the cause of the accident. Aetna and Acceptance stipulated that they would divide any award of excess damages between themselves at a ratio of 80% to 20%. The Aetna policy limits were $100,000 and the Acceptance UM coverage was $25,000. After finding that Daigre's intoxication was a cause of the accident, the jury awarded Harvey Sharp $94,200 in compensatory damages and $28,000 in exemplary damages.[4] The trial court held that the exemplary damages could not be assessed against the UM carriers. The court of appeal reversed and cast the UM carriers for the exemplary damages.[5]
Writs were granted to review the judgment of the court of appeal.[6]

UM INSURANCE
First enacted in 1962, LSA-R.S. 22:1406 D(1)(a) requires that insurance companies provide UM coverage in automobile liability policies equal to the amount of liability coverage.[7] The legislation was intended to promote full recovery of damages for innocent accident victims by making uninsured motorist coverage available as primary protection when the tortfeasor is without insurance and as additional coverage when the tortfeasor is inadequately insured. Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982); Johnson v. Fireman's Fund Insurance Co., 425 So.2d 224 (La.1983).
Louisiana courts construe the statute liberally, reading UM protection into each automobile insurance policy unless the named insured has signed an express written rejection of such coverage. Roger v. *1363 Estate of Moulton, 513 So.2d 1126 (La. 1987). Policy provisions purporting to narrow the coverage mandated by the statute have been invalidated. Seaton v. Kelly, 339 So.2d 731 (La.1976); Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La.1979); Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983).
Although the Legislature has amended the original statute several times, it has never indicated any intent to prohibit UM coverage for exemplary damages. UM coverage protects the insured at all times against the generalized risk of damages at the hands of uninsured motorists; it is not limited to certain situations or to certain degrees of risk. Block.

POLICY LANGUAGE
An insurance policy is a contract between an insurance company and a person who pays the premium. Although the insured determines the amount of coverage, the insurance company drafts the terms of the agreement. Public policy and the principles of contractual construction require the language in insurance policies to be interpreted in favor of coverage with ambiguities construed against the insurers. Insurance Company of North America v. Solari Parking, Inc., 370 So.2d 503 (La.1979); Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988).
The UM provision in the Aetna policy provided: "We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: (1) sustained by a covered person;
and (2) caused by an accident." The Acceptance policy contained similar language: "[T]he insurance [is] provided for the protection of persons insured under this policy who would legally be entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom."
In the plain language of their policies, Aetna and Acceptance have agreed to stand in the shoes of an uninsured tortfeasor and pay those damages which that tortfeasor is legally obligated to pay.[8] The jury verdict awarding exemplary damages created the legal obligation. Aetna and Acceptance argue that exemplary damages are precluded by the requirement that the damages arise "because of bodily injury, sickness, or disease." They contend that exemplary damages are awarded because of the intoxication of the tortfeasor rather than because of the bodily injury. Inasmuch as there can be no exemplary damages without underlying injuries, this argument must fall. "`Injuries' is a predicate for the article [LSA-C.C. art 2315.4] to become applicable." Creech v. Aetna Casualty & Surety Co., 516 So.2d 1168, 1171 (La.App.2d Cir.1987).[9]

SUBROGATION
A UM carrier has no independent right to recover from a tortfeasor. After paying a UM claim, a carrier may be conventionally subrogated to the rights of its insured against the tortfeasor. However, the law favors compromise. Niemann v. Travelers Insurance Co., 368 So.2d 1003 (La.1979). Without a full release, an underinsured motorist and his liability carrier would never agree to compromise. Thus, the UM carrier's interest in subrogation must be subordinated to the recovery of damages by the injured person. Niemann; McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La.L.Rev. 691 (1983). If the insured releases the tortfeasor in the course of good faith compromise and settlement, the UM carrier has no recourse. Niemann; Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Pace v. Cage, *1364 419 So.2d 443 (La.1982); Bosch v. Cummings, 520 So.2d 721 (La.1988).
Harvey Sharp's release of Daigre and USAA for full policy limits was accomplished pursuant to a bona fide compromise. Since UM carriers have only a qualified right of subrogation, Aetna and Acceptance cannot complain that their rights have been abridged.

PUBLIC POLICY
In addition to arguments based on legislative intent, policy language, and loss of subrogation rights, Aetna and Acceptance maintain that public policy should prevent payment of exemplary damages by UM carriers. First, they suggest that it is unfair to require them to pay punitive damages; they have done nothing wrong and should not be punished. This argument overlooks the nature and function of insurance companies: they pay for the harm that other people cause. In exchange for providing this guarantee of protection to thousands of motorists, they earn a profit. Having accepted insurance premiums from Harvey Sharp, they must fulfill their side of the bargain. Cf Lavender v. State Farm Mutual Automobile Insurance Co., 828 F.2d 1517 (11th Cir.1987).
The second public policy argument asserts that payment of exemplary damages by insurance companies will encourage drunk driving and sabotage the deterrent effect of LSA-C.C. art. 2315.4. Aetna and Acceptance are not the insurers of the drunk driver in this case; their obligation is to the innocent victim of the accident. Payment of damages by the insurers to their obligee, the victim, will neither encourage nor discourage drunk driving. Many Louisiana courts have already rejected this argument as it applies to liability insurance.[10]
Finally, Aetna and Acceptance contend that allowing recovery of exemplary damages from UM carriers will cause insurance companies to raise their premiums, thereby hurting the state's citizens. This argument is speculative. Furthermore, LSA-R.S. 24:1406 requires symmetrical treatment of liability and UM policies. "No automobile liability insurance ... shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy." Id. In other words, the legislature has guaranteed that an insured person who buys $100,000 of liability insurance to compensate those he might accidentally injure in the course of using his automobile will have equal protection in the event that he is injured by an uninsured or underinsured motorist. The purpose of paying an extra premium for UM coverage is protection from the failure of other motorists to be adequately insured.[11] Fairness to UM policy holders must prevail over the speculative harm suggested by defendants.
Having paid for UM coverage in both his personal and business automobile policies and having been awarded exemplary damages that exceeded the settlement received from the tortfeasor, Harvey Sharp is entitled to recover those damages from his UM carriers, Aetna and Acceptance.

DECREE
For the reasons assigned, the trial court's judgment denying recovery of exemplary damages from the UM carriers, was properly reversed and the jury's award *1365 reinstated. The opinion of the court of appeal is affirmed.
AFFIRMED.
LEMMON, J., dissents.
DENNIS, J., dissents with reasons.
NOTES
[1] LSA-C.C. art. 2315.4 states:

Additional damages; intoxicated defendant: In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
[2] LSA-R.S. 14:98(A) provides:

The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood.
[3] Sharp's car was registered to Canal Auto Sales.
[4] Sheila S. Sharp was awarded $2,800 for loss of consortium.
[5] Sharp v. Daigre, 545 So.2d 1063 (La.App. 1st Cir.1989).
[6] 550 So.2d 640 (La.1989).
[7] "No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy."
[8] See Hutchinson v. J.C. Penney Ins. Co., 17 Ohio St.3d 195, 478 N.E.2d 1000 (1985); Bauer v. White, 532 So.2d 506 (La.App. 1st Cir.1988).
[9] Sharp also argues that if exemplary damages had been excluded by the policy language or LSA-R.S. 22:1406 D(1)(a), he would have settled with Daigre and USAA for exemplary damages and left the compensatory damages for Aetna and Acceptance to pay.
[10] [A] substantial distinction exists in degree of culpability between intentional acts and wantonly reckless acts such as drunk driving. Permitting insurance coverage for such acts will not likely increase the frequency of such acts any more than permitting insurance coverage for ordinary negligent acts increases their frequency. Wanton negligence is still negligence and from a public policy standpoint should not be precluded from insurance coverage. Creech v. Aetna Casualty & Surety Co., 516 So.2d 1168, 1173 (La.App.2d Cir. 1987). See also Falgout v. Wilson, 531 So.2d 492 (La.App. 1st Cir., writ denied, 532 So.2d 154 (La.1988); Louviere v. Byers, 526 So.2d 1253 (La.App. 3d Cir.), writ denied, 528 So.2d 153 (La.1988); Beard v. Allstate Insurance Co., 534 So.2d 52 (La.App.3d Cir.1988); Annot. 16 A.L.R. 4th 11 (1982).
[11] Morvant v. U.S. Fidelity & Guaranty Co., 538 So.2d 1107 (La.App. 5th Cir.), writ denied, 541 So.2d 875 (La.1989).