# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**10-338**


**BONNIE ROMERO**

**VERSUS**

**CLARENDON AMERICA INS. CO, ET AL.**


**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 200811097
HONORABLE THOMAS R. DUPLANTIER, PRESIDING
**\*\*\*\*\*\*\*\*\*\***


**SYLVIA R. COOKS**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and
Elizabeth Pickett, Judges

**AFFIRMED. Thibodeaux, Chief Judge, dissents and assigns written reasons.**

**James P. Doherty, III**
**P.O. Box 52880**
**Lafayette, LA 70505**
**(337) 269-5143**
**Attorney For Plaintiff/Appellant:**
    **Bonnie Romero**

**Scofield & Rivera, LLC**
**James T. Rivera**
**P.O. Box 4422**
**Lafayette, LA 70502**
**(337) 235-5353**
**Attorney For Defendant/Appellee**
    **Renae G. Stanford, Inc. d/b/a Stanford Truck Lines**

**Davidson, Meaux, Sonnier & McElligott**
**J.E. McElligot, Jr.**
**Rachel B. Godley**
**P.O. Box 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**Attorneys For Defendant/Appellee**
    **Gregory J. Vidrine**

**COOKS, J.**

## FACTS AND PROCEDURAL HISTORY

Bonnie Romero (Plaintiff) was allegedly injured in an automobile accident when her car was struck by an eighteen wheeler tractor-trailer driven by Gregory J. Vidrine (Vidrine). Plaintiff alleges Vidrine ran through a stop sign and collided with her vehicle. She further alleges Vidrine was acting in the course and scope of his employment with Renae G. Stanford, Inc. d/b/a Stanford Truck Lines (Stanford) when the accident occurred. Plaintiff also alleges Vidrine was under the influence of drugs at the time of the accident and that he refused to submit to a post-accident drug and alcohol test when requested to do so by his employer. Stanford fired Vidrine for refusing to submit to drug and alcohol testing following the accident.

Plaintiff amended her original petition for damages alleging she is entitled to recover punitive damages against all defendants named in her suit under the provisions of La.Civ.Code art. 2315.4. Stanford asserts Plaintiff has no right of action and no cause of action against it for punitive damages as a matter of law, maintaining that punitive damages are only recoverable against Vidrine individually.

Plaintiff filed a motion for summary judgment on the issue of punitive damages against Stanford and its insurers, and filed a motion to compel discovery of information relating to Stanford's financial worth. Stanford filed a cross motion for summary judgment alleging it is not vicariously liable for any punitive damages which may be awarded against Vidrine. The trial court denied Plaintiff's motion for summary judgment and her motion to compel discovery and granted Stanford's cross motion for summary judgment finding Stanford is not liable for any punitive damages which may be awarded against Vidrine. Plaintiff filed a writ of review with this court which we denied with instructions to Plaintiff that she request the trial court certify its ruling as a final judgment. The trial court certified the ruling as a final judgment

and Plaintiff now appeals the trial court's denial of her motion for summary judgment and denial of her motion to compel discovery. Vidrine also assigns error on appeal alleging the trial court erred in failing to dismiss Plaintiff's motion for summary judgment as premature. However, Vidrine did not file an Answer to the appeal nor did Vidrine appeal the trial court's ruling. We, therefore, cannot consider Vidrine's assignment of error.

**ANALYSIS**

Plaintiff is not entitled to recover punitive damages from Stanford. Although our courts have not had occasion to rule directly on the question of whether punitive damages, such as those imposed under the provisions of La.Civ.Code art. 2315.4, can be imposed upon a party vicariously liable for general damages, the jurisprudence applying Article 2315.4 and other punitive damage statutes is instructive.

> In Louisiana, there is a general public policy against punitive damages; thus a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute. *Ricard v.State*, 390 So.2d 882 (La. 1980); *Killebrew v. Abbott Labs*., 359 So.2d 1275 (La. 1978). Furthermore, when a statute does authorize the imposition of punitive damages, it is subject to strict construction. *International Harvester Credit*, 518 So.2d at 1041; *State v. Peacock*, 461 So.2d 1040, 1044 (La. 1984).

*Ross v. Conoco, Inc*., 02-299, p. 14 (La. 10/15/02), 828 So.2d 546, 555.

Louisiana Civil Code Article 2315.4 provides:

> In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.

Vicarious liability of employers for the actions of their employees is established in the Louisiana Civil Code at Article 2320. It provides in part (emphasis added):

> Masters and servants are answerable for the damage occasioned

1

by their servants and overseers, in the exercise of the functions in which they are employed.

Teachers and artisans are answerable for the damage caused by their scholars or apprentices while under their superintendence.

*In the above cases, responsibility only attaches, when the masters or employers, teachers or artisans, might have prevented the act which caused the damage, and have not done it.*

The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts*, *and of offenses and quasi-offenses*.

First, we note, there is no evidence nor allegation that Stanford "might have prevented" Vidrine's intoxication. Additionally, Stanford insisted that Vidrine be tested immediately following the accident and fired him when he refused to be tested. Thus, under the express provisions of La.Civ.Code art. 2320, Stanford's vicarious liability for damages which resulted from Vidrine's intoxicated state hinges upon whether it could have prevented Vidrine from driving while under the influence of drugs or alcohol. Further, we find this Article addresses only the compensatory damages which Stanford's servant may have caused by his negligence. The Louisiana Supreme Court, when reviewing similar language found in La. Civ.Code art. 2324, held:

> [T]he language of Article 2324 that co-conspirators are answerable in solido 'for the damage caused by such act' indicates that the Article imposes solidary liability only for compensatory damages. As the dissenting judge in the court of appeal below points out, this wording is important. *See* (*Ross* [v. Conoco, Inc., 00-1757 (La.App. 3 Cir. 12/26/01)], 805 So.2d [352], 369.) (Amy, J., dissenting). It is compensatory damages that recompense a plaintiff for injury caused by a defendant's act. Punitive damages, on the other hand, are not *caused* by a defendant's act and are not designed to make an injured party 'whole.' Rather, they are meant to punish the tortfeasor and deter specific conduct to protect the public interest. *Billiot* [v. B.P. Oil Co., 93-1118 (La.9/28/94), 645 So.2d 604], 612 [overruled on other grounds *Adams v. J.E. Merit Constr.*, 97-2005 (La.5/19/98), 712 So.2d 88.] Consequently, we conclude that the solidarity imposed by Article 2324, cannot be used to assess punitive damages against a party based on the acts of co-conspirators. To be subject to punitive damages, each co-

2

conspirator's individual conduct must fall within the scope of the applicable penal statute.

*Ross*, 828 So.2d at 552-53.

Likewise, there is no reference in Article 2320 to vicarious liability for *punitive damages* imposed upon an individual for proscribed behavior.

The language of Article 2315.4 is clear and unambiguous. It expressly provides for punitive damages against *"a defendant"* who recklessly or wantonly disregards the safety of others by driving while intoxicated. The article is clearly aimed at the offending person's behavior and none other. We addressed the application of Article 2315.4 to persons who supplied liquor to a driver in *Bourque v. Bailey*, 93-1657 (La.App. 3 Cir. 9/21/94), 643 So.2d 236, *writ denied*, 94-2619 (La.12/16/94), 648 So.2d 392. In that case, later cited by the Louisiana Supreme Court with approval, we refused to hold third parties who supplied alcoholic beverages to the defendant driver liable for punitive damages which arose as a result of the defendant driver's intoxication. As we stated in *Bourque*, 643 So.2d at 239 (emphasis added):

> In light of the intentions of the legislature as revealed by the article's clear terms and other related legislation on the subject, we hold that LSA-C.C. art. 2315.4 limits those from whom penal relief might be obtained to '*a defendant* whose intoxication while operating a motor vehicle was a cause in fact...' of injuries to others. Significantly, the provision defines *a limited class of individuals against whom exemplary damages may be awarded*, not one which works to deny an accident victim his right to compensatory damages in derogation of LSA-C.C. art. 2315.1. Cf., *Monteville v. Terrebonne Par. Con. Gov't.*, 567 So.2d 1097, 1100 (La. 1990); Cf. *Joe, Inc. v. Chevron U.S.A., Inc.*, 561 So.2d 62, 64 (La. 1990).

We also rejected the contention in *Bourque* that the third parties who supplied liquor to the defendant should be held liable in solido for any exemplary damages assessed against the defendant intoxicated driver. We held:

Neither *Thibaut* [*v. Thibaut*, 607 So.2d 587 (La.App.1st Cir.),*writs*

3

*denied*, 612 So.2d 37 (La. 1993)] nor *Narcisse* [*v. Illinois Cent. R. Co.*, 427 So.2d 1192 (La. 1983)] control the question of whether a co-defendant found liable for general damages may be summoned simply on account of its co-defendant status to bear the responsibility of another condemned to pay exemplary damages. Bearing in mind the nature of exemplary damages, *International Harvester Credit, supra*, and that LSA-C.C. art. 2315.4 *is designed to penalize an intoxicated tortfeasor*, not to compensate injured plaintiffs, we hold that those whose conduct is not directly targeted by LSA-C.C. art. 2315.4 cannot be bound by LSA-C.C. art. 2324 to shoulder that responsibility. Stated differently, we hold that, directly or indirectly, only the intoxicated driver, his insurer, and legal representatives– in other words, those affiliated with the party targeted by the punitive provisions of LSA-C.C. art 2315.4– may be assessed with punitive damages under that provision. A contrary conclusion would be analogous to finding a liability insurer liable in solido with its insured beyond its policy limits, something which is verboten. See generally, *Fertitta v. Allstate Ins. Co.*, 462 So.2d 159, 162, n. 4, and accompanying text. (La. 1985).

*Bourque*, 643 So.2d at 241 (emphasis added).

In *Ross*, the Louisiana Supreme Court, quoting from our decision in *Bourque,* rejected the assessment of punitive damages against co-conspirators under the provisions of former LSA-Civ.Code art. 2315.3. The court in *Ross* stated:

> In *Bourque v. Bailey*, 93-1657 (La.App. 3d Cir. 9/21/94), 643 So.2d 236, *writ denied*, 94-2619 (La. 12/16/94), 648 So.2d 392, a panel of the Third Circuit Court of Appeal considered the issue of whether persons who contribute to the intoxication of the driver, including a bar owner, store proprietor, and/or passenger who supply the driver with alcohol, could be cast with punitive damages through Article 2324. The court noted that Article 2315.4 must be narrowly interpreted and that punitive damages are designed to penalize an intoxicated tortfeasor, not simply to compensate an injured plaintiff. *Bourque*, 643 So.2d at 241. The court relied on the legislative history of Article 2315.4 to determine that the intoxicated driver was the only party covered by the statute. *Id.* Accordingly, the court held that those *co-defendant participants whose conduct is not directly targeted by article 2315.4 cannot be bound by Article 2324 to shoulder the punitive damages responsibility*. *Id.*

*Ross*, 828 So.2d at 554 (emphasis added). There is nothing in the record which demonstrates any behavior on the part of Stanford for which Stanford should be penalized as an offending tortfeasor.

In reaching its decision in *Ross*, the Louisiana Supreme Court also relied on its

decision in *Berg v. Zummo*, 00-1699 (La.4/25/01), 786 So.2d 708:

> This court in *Berg v. Zummo*, 00-1699 (La.4/25/01), 786 So.2d 708, adopted the reasoning of *Bourque* and concluded that the legislature attempted to *target only the conduct of the intoxicated driver of the motor vehicle* when it passed Article 2315.4; thus, *the Article does not allow the imposition of punitive damages against persons who have allegedly contributed to the driver's intoxication.* As we determine here, former Article 2315.3 was similarly targeted only at those parties who directly store, handle, or transport the hazardous substance that harms the plaintiff. Accordingly, alleged co-conspirators cannot be brought within the scope of this punitive statute through application of Article 2324.

*Ross*, 828 So.2d at 554 (emphasis added). The Louisiana Supreme Court in *Ross* expressly rejected the lower court's "expansive interpretation" of former Article 2315.3 and found it failed to adhere to the policy of strict construction of our punitive statutes. *Id.* at 555. In view of the rationale stated in these decisions we do not believe that the punitive damages provided for in LSA Civ.Code art. 2315.4 can be assessed against Stanford as Vidrine's employer, especially where there has been no allegation nor any showing made that Stanford in any manner contributed to Vidrine's intoxication. The trial court correctly rejected Plaintiff's motions. The ruling of the trial court is affirmed and all costs of this appeal are assessed against Plaintiff.

**AFFIRMED.**

5

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**10-338**

BONNIE ROMERO

VERSUS

CLARENDON AMERICA INS. CO, ET AL.

**THIBODEAUX, Chief Judge, Dissenting.**

The majority is simply wrong.

The majority quotes La.Civ.Code art. 2320 emphasizing that portion which states that the vicarious responsibility only attaches when the masters might have prevented the act which caused the damage and have not done it. The majority then states: "there is no evidence nor allegation that Stanford 'might have prevented' Vidrine's intoxication." The majority also notes that "[t]here is nothing in the record which demonstrates any behavior on the part of Stanford for which Stanford should be penalized as an offending tortfeasor." The majority further points that no damages can be assessed against Stanford "especially where there has been no allegation nor any showing made that Stanford in any manner contributed to Vidrine's intoxication."

Neither compensatory nor punitive damages would accrue to Stanford because La.Civ.Code art. 2320 applies, at the very least, to compensatory damages. Moreover, this view fails to recognize that if there were evidence of Stanford's behavior in that manner, the plaintiff would not need the vicarious theory of liability. It could proceed against Stanford directly. The majority's interpretation of the statute would render the doctrine of respondeat superior virtually meaningless by limiting the

employer's liability to those cases in which the employer would itself be *directly* liable. If this understanding of the majority's holding is correct, and Stanford is not vicariously liable even for the compensatory damages, I fail to comprehend why the majority goes on to discuss vicarious liability for the punitive damages.

If for some reason I have misunderstood the majority's reasoning, and Stanford can be liable for compensatory damages, then, Stanford is liable for punitive damages as well. The majority begins by an erroneous assertion: "our courts have not had occasion to rule directly on the question of whether punitive damages . . . can be imposed upon a party vicariously liable for general damages . . . ." In fact, "[e]mployers have been held vicariously responsible for the punitive damages chargeable to their employee-drivers." 12 WILLIAM E. CRAWFORD, LOUISIANA CIVIL LAW TREATISE § 9:16 (2d ed. 2009) (citing *Lacoste v. Crochet*, 99-602 (La.App. 4 Cir. 1/5/00), 751 So.2d 998; *Curtis v. Rome*, 98-966-70 (La.App. 4 Cir. 5/5/99), 735 So.2d 822, *writ denied, Rambo v. Rome*, 99-1617 (La. 10/1/99), 748 So.2d 441). Thus, while ignoring the on-point jurisprudence, the majority relies exclusively on the jurisprudence which held La.Civ.Code art. **2324** (liability as solidary or joint and divisible obligation) inapplicable to expand the liability for punitive damages on other defendants (*Ross v. Conoco, Inc.,* 02-299 (La. 10/15/02), 828 So.2d 546; *Bourque v. Bailey*, 93-1657 (La.App. 3 Cir. 9/21/94), *writ denied*, 94-2619 (La. 12/16/94), 648 So.2d 392). For the following reasons, this reliance is, at best, misguided.

First, when the supreme court faced the question as to whether *solidarily* liable defendants could be *solidarily* liable for punitive damages, it expressly cautioned that its analysis did *not* encompass *vicariously* liable defendants. *Berg v. Zummo*, 00-1699 (La. 4/25/01), 786 So.2d 708. Second, the same court that held the employer vicariously liable for punitive damages distinguished that jurisprudence and ruled that

2

the solidarity of an obligation to pay compensatory damages does not make all of the defendants solidarily liable for punitive damages. *Berg v. Zummo*, 99-974 (La.App. 4 Cir. 5/10/00), 763 So.2d 57, *rev'd on other grounds*, 00-1699 (La. 4/25/01), 786 So.2d 708. Thus, both the supreme court and our sister jurisdiction at the fourth circuit had no difficulty recognizing that solidary and vicarious liability are two completely different and unrelated theories of liability.

Quoting at some length *Ross*, 828 So.2d 546, the majority fails to distinguish the relationship and the accompanying policy considerations between the punitively–liable tortfeasor and his co-consipirators and the punitively–liable tortfeasor and his employer. The focus in the conspirators' punitive liability is on the *person(s)* whose culpable conduct caused plaintiff's injuries. Thus, "the solidarity imposed by Article 2324 cannot be used to assess punitive damages against a party based on the acts of co-conspirators. To be subject to punitive damages, each co-conspirator's individual conduct must fall within the scope of the applicable penal statute." *Id.* at 553. The theory of vicarious liability is different in that the focus is not on the culpability of the defendant but on *who will be paying for the damages once they are assessed*. This is because a corporate employer who acts only through its employees is always deemed culpable when the employee, acting in the course and scope of the employment, is held liable for punitive damages.

The courts of this state have understood this wisdom for some time. Over ten years ago, the fifth circuit confronted the question of whether to assess punitive damages against the principal whose agent was held liable for punitive damages. There, the presently-repealed statute authorized punitive damages for wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. The court observed:

> It seems to us that to hold that the negligence of an agent cannot be imputed to the principal in awarding punitive damages would have the effect of virtually eliminating punitive damage awards. Likewise, in order to avoid punitive damage liability, a corporation would simply have to create a separate entity to perform the hazardous activities, thus insulating itself from punitive liability. To allow punitive liability to be so easily sidestepped runs counter to the legislature's public policy concerns in imposing punitive damages in certain enumerated situations. As such, we find that negligence for punitive damages, like any other type of negligence, may be imputed to a principal through the acts of an agent.

*Rivera v. United Gas Pipeline Co.*, 96-502, 96-503, 97-161, p. 10 (La.App. 5 Cir. 6/30/97), 697 So.2d 327, 336, *writs denied*, 97-2030-32, 97-2034, (La. 12/12/97), 704 So.2d 1196-97.

The fourth circuit, when presented with the same question this court now faces, has ruled twice that the employer is vicariously responsible for the punitive damages assessed against its intoxicated employee-driver in *Curtis*, 735 So.2d 822 and in *Lacoste*, 751 So.2d 998. Most likely because the resolution of the issue was so self-explanatory and self-evident the fourth circuit did not provide much reasoning behind its decision. I have no doubt, though, that the court was driven by the same considerations the fifth circuit so aptly observed in *Rivera*, 697 So.2d 327 noted above.

These observations are certainly not new. Over a hundred years ago, the courts of this country had the acumen of holding corporations vicariously liable for punitive damages and noted the folly of requiring corporate culpability independent of the employee's culpability:

> A corporation is an imaginary being. It has no mind but the mind of its servants; it has no voice but the voice of its servants; and it has no hands with which to act but the hands of its servants. All its schemes of mischief, as well as its schemes of public enterprise, are conceived by human minds and executed by human hands; and these minds and hands are its servants' minds and hands. All attempts, therefore, to distinguish between the guilt of the servant and the guilt of

4

the corporation; or the malice of the servant and the malice of the corporation; or the punishment of the servant and the punishment of the corporation, is sheer nonsense; and only tends to confuse the mind and confound the judgment. Neither guilt, malice, nor suffering is predicable of this ideal existence, called a corporation. And yet under cover of its name and authority, there is in fact as much wickedness, and as much that is deserving of punishment, as can be found anywhere else. And since these ideal existences can neither be hung, imprisoned, whipped, or put in the stocks,–since in fact no corrective influence can be brought to bear upon them except that of pecuniary loss,–it does seem to us that the doctrine of exemplary damages is more beneficial in its application to them, than in its application to natural persons. If those who are in the habit of thinking that it is a terrible hardship to punish an innocent corporation for the wickedness of its agents and servants, will for a moment reflect upon the absurdity of their own thoughts, their anxiety will be cured. . . . There is but one vulnerable point about these ideal existences, called corporations; and that is, the pocket of the monied power that is concealed behind them; and if that is reached they will wince. *When it is thoroughly understood that it is not profitable to employ careless and indifferent agents, or reckless and insolent servants, better men will take their places, and not before.*

*Goddard v. Grand Trunk Ry. of Can.*, 57 Me 202, 223-24 (1869) (emphasis added).

Thus, when an employee is culpable and is liable for punitive damages, the corporate employer is always culpable as well because the corporate employer acts only through its employees.

Even if one entertains the idea that the employer is an innocent party the result must be, nevertheless, the same. The majority states that La.Civ.Code art. 2315.4 "is clearly aimed at the offending person's behavior and none other." That an insurer has been held liable for punitive damages assessed against its insured makes the majority's observation erroneous. *See Sharp v. Daigre*, 555 So.2d 1361 (La.1990); *Creech v. Aetna Cas. & Sur Co.*, 516 So.2d 1168 (La.App. 2 Cir. 1987), *writ denied*, 519 So.2d 128 (La.1988). "LSA-C.C. art. 2315.4 has a dual purpose, to penalize (and therefore deter) the drunk driver, as well as to provide damages for the victim of such

5

driver." *Sharp v. Daigre*, 545 So.2d 1063, 1064-65 (La.App. 1 Cir. 1989), *aff'd*, 555 So.2d 1361 (La.1990) (citing *Morvant v. U.S. Fid. & Guar. Co.*, 538 So.2d 1107 (La.App. 5 Cir.), *writ denied*, 541 So.2d 875 (La.1989)). As I have mentioned before, a different set of policy considerations applies when it comes to employers as opposed to co-conspirators, and those considerations are similar to those which hold an insurer liable for punitive damages.

The court explained:

Although the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and from the plaintiff's standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him.

It is true that the purpose of punitive damages is to discourage egregious conduct. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled "punitive."

*Creech*, 516 So.2d at 1173 (citation omitted).

Unlike the case of co-conspirators, the focus, when it comes to insurers and employers, is not on whose culpable conduct caused the injury but on who is responsible to pay the damages once the injury occurred. Even if I accepted the premise that the employer is an innocent party, the employer is still liable just like the innocent insurer is. This is because once the injury occurs in the manner that our legislature has deemed atrocious, reprehensible, and outrageous by way of providing for punitive damages between the two innocent parties: the victim and the insurer or the victim and the employer, the party who is more capable to bear the loss should do so. In this case, it is the employer.

Both employers and insurers accept the responsibility to pay for the culpable conduct of their employees and insureds, respectively. Like an insurer who

6

chooses to insure a particular risk, an employer chooses to employ a particular person.[1]

The only difference is that the insurer accepts the responsibility contractually, and the employer does so by virtue of hiring the person. Again, if the employer were indeed culpable[2] and not simply deemed to be so, then the plaintiff would be able to proceed directly against the employer and would not need to rely on a theory of vicarious liability.

The majority quotes *Ross*, 828 So.2d 546, at some length regarding the object of punitive damages. As explained above, the object of deterrence is achieved if the exemplary "damages will encourage employers to exercise closer control over their servants for the prevention of outrageous torts." W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 2 (5th ed. 1984). Yet, I also note that the majority fails to recognize that punitive damages have a "hybrid nature." 6 SAUL LITVINOFF, LOUISIANA CIVIL LAW TREATISE § 7.2 (1999). "Deterrence is only *one* aspect of exemplary damages." *Sharp*, 545 So.2d at 1068. "It is true that the purpose of punitive damages is to discourage egregious conduct. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled 'punitive.'" *Creech,* 516 So.2d at 1173 (citation omitted). See also 6

_____

[1] In fact, insurers have been held to an even higher standard. Thus, a plaintiff may recover punitive damages against the insurer under the uninsured motorist coverage. In the case of uninsured motorist, the insurer never knows against whom it is insuring. Nevertheless, the insurer is liable for the punitive damages because "compensation for the victim plaintiff is an aspect of LSA-C.C. art. 2315.4, which is just as important as is deterrence." *Sharp*, 545 So.2d at 1065 (quoting *Morvant*, 538 So.2d at 1109).

[2] Under the majority's reasoning, I cannot see how the corporate employer could ever be culpable or liable for any damages, compensatory or exemplary. This is because when one states that a corporation is culpable it means not that the corporation has acted in a particular manner, because it is impossible for it to do so, but it means that its agents/employees acted so. I believe it is safe to assume that when faced with any liability, a corporation (again, thorough its other employees and agents) would attempt to shift the responsibility from itself and onto the employees claiming innocence. If we follow the majority's reasoning to its logical conclusion, then a corporate defendant would never be liable for anything. When the majority stresses the lack of evidence of Stanford's contribution to Vidrine's intoxication, the majority implicitly requires an impossibility. "Stanford's behavior" will always be through its employees only. Thus, because "Stanford" never really acts, it will be liable for neither compensatory nor punitive damages. Instead, only Stanford's employees will be liable.

7

SAUL LITVINOFF, LOUISIANA CIVIL LAW TREATISE § 7.2, 7.7 (1999) for a discussion on the nature of punitive damages.

Moreover, in our legal system where the plaintiff bears her attorney costs, it is difficult to maintain that compensatory damages adequately compensate the victim. Thus, punitive damages, in addition to punishing the tortfeasor, help defray the plaintiff's legal expenses as well as "solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong." *Sharp*, 545 So.2d at 1064 (quoting BLACK'S LAW DICTIONARY 352 (5th ed. 1979)). Therefore, holding the employer vicariously liable for the punitive damages assessed against its employees acting in the course and scope of their employment achieves all of the goals of punitive damages.

For the foregoing reasons, I respectfully dissent